OPINION OF THE COURT
 

 Simons, J.
 

 In these two actions, we are asked to decide whether a woman who is entitled to share in her former husband’s pension is also entitled to share in benefits from an early retirement incentive package accepted by the former husband after divorce. We hold that such postdivorce incentive packages are not marital property, and therefore not subject to equitable distribution, except for the portion of the package that enhances pension benefits payable to the employee. We therefore affirm the order of the Appellate Division in
 
 Tan-chick v Tanchick
 
 and modify the order in
 
 Olivo v Olivo.
 

 I
 

 Respondents were among the longtime employees of the Eastman Kodak Company who accepted an early retirement plan offered by the company in August 1991. The plan, designed to encourage a voluntary reduction in Kodak’s workforce, provided three incentives: (1) an Enhanced Retirement Income Benefit providing 100% of an employee’s pension benefit even though the employee was not yet eligible for full pension; (2) a Social Security Bridge Payment providing the employee with a payment equal to Social Security from the date of retirement until the time the employee became eligible for Social Security; and (3) a separation payment. Kodak financed the plan through excess funds available in the Kodak Retirement Income Plan (KRIP), an account from which retirement income benefits are paid. The early retirement plan was offered to employees who met the so-called "Rule of 75”— those whose total years at Kodak, added to the employee’s age, equaled 75 or more.
 

 Both respondents had divorced prior to their acceptance of the Kodak offer. Under the terms of their respective divorces, their former wives, appellants in these two appeals, were entitled to pro rata shares of their pension benefits from KRIP, with the shares calculated on the basis of the number
 
 *206
 
 of years they were married and working at Kodak as a fraction of their total years at Kodak
 
 (see, Majauskas v Majauskas,
 
 61 NY2d 481). Under the Tanchicks’ Qualified Domestic Relations Order (QDRO), Mrs. Tanchick was to receive her share from the "specified marital portion of whatever KRIP benefit is attributed” to Mr. Tanchick. In the Olivos’ case, a Stipulated QDRO provided that Mrs. Olivo would share in KRIP benefits, including cost-of-living increases and "any other post-retirement benefit increase”.
 

 Following their acceptance of the Kodak early retirement plan, the parties sought judicial determination of their rights to the three-part Kodak package. In a proceeding brought to amend the QDRO, respondent Tanchick conceded that his former wife was entitled to share in the enhanced retirement income benefit, but argued that the other two portions of the package were his separate property acquired after dissolution of the marriage. In a similar proceeding, respondent Olivo contended that all three parts of the package were separate postdivorce property to which his former wife had no rights.
 

 Supreme Court accepted Mr. Tanchick’s argument and amended the QDRO to show that Mrs. Tanchick had no rights in either the Social Security Bridge Payment or the separation allowance. The Appellate Division affirmed.
 

 Mr. Olivo made no such concession on the enhanced retirement income benefit, however. Supreme Court accepted his argument and amended the Olivos’ QDRO to reflect that Mrs. Olivo enjoyed no rights in any part of the package. Because Mrs. Olivo was manifestly entitled to a portion of Mr. Olivo’s pension benefits, Supreme Court examined the particular structure of the enhanced pension component of the early retirement plan to determine her appropriate share. In essence, the Kodak plan eliminated the early retirement "penalty” — i.e., the smaller benefit that is paid to those who retire early. Those accepting the early retirement package were treated as though they had met the requirements for a full pension.
 
 *
 
 Supreme Court’s decision construes the accelerated
 
 *207
 
 right to a full pension as the property Mr. Olivo obtained postdivorce. Thus, it determined that Mrs. Olivo was entitled to share only in the pension that would have been paid had the standard retirement plan been operative and the penalty for early retirement applied. Using that fictional calculation, the court determined the present value of her share. The Appellate Division affirmed.
 

 II
 

 The appeals require us to revisit our decisions concerning the rights of spouses to pension benefits earned during marriage but paid after divorce. New York law requires that marital property be distributed equitably between the parties (Domestic Relations Law § 236 [B] [5] [c]). As defined statutorily, marital property is "all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action” (Domestic Relations Law § 236 [B] [1] [c]). In applying that statutory scheme, we have held that pension rights earned during a marriage, prior to a separation agreement or matrimonial action, are properly considered marital property subject to equitable distribution
 
 (see, Majauskas v Majauskas,
 
 61 NY2d 481,
 
 supra).
 
 Our decision in
 
 Majauskas
 
 was premised on the idea that a pension is a form of deferred compensation (at 491-492). Even though workers are unable to gain access to the money until retirement, their right to it accrues incrementally during the years of employment. Thus, that portion of a pension based on years of employment during the marriage is marital property. Using this rationale, we have concluded that certain disability payments were subject to equitable distribution when those payments were calculated according to the number of years of employment and were therefore partially earned during the years the recipient was both employed and married
 
 (see, Dolan v Dolan,
 
 78 NY2d 463).
 

 It follows from
 
 Majauskas
 
 and
 
 Dolan
 
 that if the rights to the three forms of compensation at issue here were earned, in part, during the marital years, the former spouses should share in the compensation pro rata. The crux of the position advanced by Mr. Olivo (and by Mr. Tanchick, as it applies to the second and third parts of the retirement package) is that an early retirement incentive is not deferred compensation but rather compensation given by the company in exchange
 
 *208
 
 for the employee’s agreement to leave the work force
 
 (see, Biddlecom v Biddlecom,
 
 113 AD2d 66,
 
 supra).
 
 No right to early retirement incentives existed during the marital years
 
 (compare, Hughes v Hughes,
 
 601 NE2d 381 [Ind App]). Nor, according to respondents, was the compensation given by Kodak in exchange for any marital property. In their view, an employee’s right to the package came into existence only at the moment Kodak offered the plan in 1991, well after both divorces.
 

 Appellants respond by asserting that an employee’s right to participate in the early retirement program was determined by length of employment and therefore the incentives come within the rule of
 
 Majauskas (see, Ryan v Ryan,
 
 261 NJ Super 689, 619 A2d 692). Only by counting the marital years during which they were also employed at Kodak did Mr. Tanchick and Mr. Olivo become eligible to accept the early retirement deal. Appellants rely specifically on language in
 
 Dolan v Dolan,
 
 in which we stated, "It is clear from the length of service requirement for the ordinary disability pension at issue * * * that plaintiff is being compensated for his length of service” (78 NY2d, at 468,
 
 supra).
 

 Neither
 
 Dolan
 
 nor
 
 Majauskas,
 
 however, can be read as establishing a "length of service” test for marital property. To do so would lead to absurd results. A salary or wage increase, for instance, given years after a divorce but based on a worker’s seniority would be marital property subject to equitable distribution. Instead, the test of
 
 Dolan
 
 and
 
 Majauskas
 
 is whether the compensation in question is a form of deferred compensation. A length of service requirement may be some evidence of that, but it is not conclusive.
 

 We conclude the Appellate Division was correct in holding that the Social Security Bridge Payment and separation payment — the second and third parts of the Kodak package — were not forms of deferred compensation and thus not marital property. Respondents had no right to these payments during the time they were married. Had they retired the day before the Kodak plan became effective, they would have been entitled to neither payment. Rather than being compensation
 
 deferred
 
 until some point after the divorce like the traditional pension in
 
 Majauskas,
 
 the two payments here were compensation
 
 created
 
 after the divorce. In that way, these portions of the Kodak package are distinguishable from the pension in
 
 Majauskas
 
 and the disability payment in
 
 Dolan.
 

 
 *209
 
 That Kodak chose to fund the payments from KRIP does not require a different result, either as a matter of law or under the terms of the particular QDROs here. Kodak’s decision to rely on excess KRIP funds was a matter of corporate financial discretion. The company was free to use other funds to finance early retirement or, conversely, to use the KRIP excess for other purposes. None of the workers participating in the early retirement program had any entitlement to those particular funds. It is clear as well that references to KRIP in the QDROs here were understood by the parties to mean the pensions to which the employed spouses would become entitled upon retirement, not other payments for other purposes that Kodak might decide to make.
 

 Thus, the Social Security Bridge Payments and separation payments made to Mr. Tanchick and Mr. Olivo were assets obtained after divorce and not marital property.
 

 We reach a different result with respect to the enhanced retirement income, which is contested only in the
 
 Olivo
 
 action. In determining Mrs. Olivo’s share of the pension, the courts below employed the fiction that her former husband had retired early under the terms of the standard Kodak retirement plan, which would have given him only a partial pension. By doing so, the courts allowed Mr. Olivo alone to enjoy the additional amount he received as part of the full pension he became entitled to under the early retirement package.
 

 Such a bifurcation of the pension to diminish Mrs. Olivo’s entitlement is unwarranted. By its very nature, a pension right jointly owned as marital property is subject to modification by future actions of the employee. Should the employed spouse retire early, both parties receive a smaller benefit than they would have otherwise. The employee is, of course, free to do so, even though it incidentally and adversely affects the other party’s rights, and the nonemployee spouse would have no grounds for recovery of the "loss”. On the other hand, an employee who engages in extended employment at progressively higher wages is not entitled to keep the "excess” earned beyond what would have accrued at the time of expected retirement.
 

 Similarly, both parties’ rights are generally subject to changes in the terms of a retirement plan, as well as to circumstances largely beyond their control, such as the salary level finally achieved by the employee and used to calculate
 
 *210
 
 the pension benefit. What the nonemployee spouse possesses, in short, is the right to share in the pension as it is ultimately determined. When Mr. Olivo accepted an early retirement package that enhanced his pension, it perforce enhanced Mrs. Olivo’s share in that pension as well. Unlike the other two components of the package, the enhancement was a modification of an asset not the creation of a new one. The Olivos’ agreement upon terminating the marriage gave Mrs. Olivo an entitlement to share in her former husband’s pension, not an entitlement to a fixed sum or even to a particular methodology of calculating the pension benefit. In keeping with that agreement and our .holdings in
 
 Majauskas
 
 and
 
 Dolan,
 
 her pro rata share should have been calculated against the pension actually obtained by Mr. Olivo.
 

 Accordingly, in
 
 Tanchick v Tanchick
 
 the order of the Appellate Division should be affirmed, with costs; in
 
 Olivo v Olivo
 
 the order of the Appellate Division should be modified, without costs, in accordance with this opinion and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Titone, Hancock, Jr., Bellacosa, Smith and Levine concur.
 

 In
 
 Olivo v Olivo:
 
 On review of submissions pursuant to section 500.4 of the Rules of the Court of Appeals (22 NYCRR 500.4), order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.
 

 In
 
 Tanchick v Tanchick:
 
 Order affirmed, with costs.
 

 *
 

 The parties acknowledge that, although the employees were made eligible for a full pension, the benefits are reduced actuarially to reflect the longer anticipated period of retirement. Consequently, Mr. Olivo is receiving smaller payments than he would have received upon later retirement. Mrs. Olivo argues that this actuarial reduction diminished her rights
 
 (compare, Biddlecom v Biddlecom,
 
 113 AD2d 66). For the reasons we discuss later in this opinion, an actuarial reduction, without more, would not be grounds for relief.