OPINION OF THE COURT
David B. Saxe, J.
In this relatively short, childless marriage (seven years), the second for both parties, in which it is conceded that they lived well beyond their means, the principal issue for determination is whether the defendant’s disability insurance proceeds are marital property, subject therefore to equitable distribution.
A short factual overview follows. The parties are already divorced; this action concerns maintenance, equitable distribution, and counsel fees. At the commencement of this action, the defendant was 40, the plaintiff 45. The parties had initially come together in a business venture known as Galyn Associates (Galyn), in 1978. The firm was started to take advantage of the defendant’s unusual skill and experience in analyzing trades and investments in a split second on the trading floor, without the benefit of a computer, and to negotiate complex and costly trades effectively and profitably.
The plaintiff, who had prior work experience as a flight attendant and medical assistant, made an initial investment of approximately $25,000-$30,000, which she had borrowed from her then father-in-law.
Galyn did fabulously well for a few years until the stock market crash of 1987, from which the business never recovered. Their marriage began to go downhill from that point also and the parties separated in 1988.
Apparently, the stresses of business disabled the defendant with a severe gastroesophageal disorder, and in 1990 he left Wall Street and moved to Arizona and returned to school. He graduated summa cum laude from the University of Arizona and thereafter he was accepted in a Ph D program in psychology at the University of Southern California.
At the time of their separation there were few assets remaining; as indicated previously, the parties had lived a lavish life-style, well beyond their means. What remained was approximately $300,000 in aggregate retirement plans (divided between them with approximate equality), approximately $200,000 in jewelry, and $57,500 in furs.
At the time of the trial, the retirement plans, aggregating *348 $282,104 were largely intact. Plaintiff holds $138,104, defendant $144,000.
With respect to the jewelry and furs, the plaintiff contends that with the exception of a watch (worth about $10,000) she sold her entire collection, valued at over $250,000, during a period of a year or two. In most instances, the plaintiff claims that she sold the items for less than their declared values, usually to friends and acquaintances, without attempting to maximize the sale prices.
The plaintiff did not declare the capital losses for these sales in her tax returns, which is required by Federal law. She never told the defendant about these sales, nor did she obtain his consent. It is likely under the circumstances testified to that the plaintiff either hid or parked these assets or sold them at much higher prices than she disclosed; if in fact she sold these items at the distress prices she testified to, she committed waste. I discount her testimony that she had to sell the jewelry to sustain herself during this two-year period because both her lawyers had become ill.
It is noted that during the marriage the parties shared the Galyn profits equally and maintained separate checking accounts out of which they paid their respective individual expenses.
In 1985, the defendant acquired a disability insurance policy. It provided insurance for the defendant in the event that he were to become unable to perform his then occupation as a floor trader due to illness. The testimony establishes that the premiums for the insurance policy were paid for by the defendant out of his share of Galyn receipts. The defendant thereafter became disabled and applied for disability insurance payments under the two policies on account of his claimed inability to continue working as a floor broker or trader. He presently receives tax-free payments of $10,200 per month ($122,400 per year) according to the terms of the policy. As long as he cannot return to his trading career due to his medical condition, he will continue to receive these payments. The plaintiff claims that these payments are marital property arising out of their marital partnership and that she is entitled to a 60% interest in the policies. Her contentions miss the mark.
Section 236 (B) (1) (d) (2) of the Domestic Relations Law defines as separate property "compensation for personal injuries”. If the defendant had not suffered a physical injury, *349 there would be no payment under the policies. The fact that the payments are measured by lost earnings is of no consequence.
In Dolan v Dolan (78 NY2d 463 [1991]), the Court of Appeals considered this issue in the context of a disability pension. In Dolan (supra), the Court held that the portion of the award that constituted the usual deferred earnings component of the pension would be marital property, but the additional component triggered by the personal injury would be separate property.
The defendant’s disability payments are not, according to Dolan (supra), deferred income. These disability payments did not commence until after Galyn had ceased operating. The parties were both paid equally during the time of Galyn’s operations. Accordingly, these payments of insurance proceeds are not deferred income.
The plaintiff additionally argues that the disability payments are not a personal injury award, but, instead, lost earnings, and are therefore marital property. This argument likewise is wrong. The law in New York (see, Olivo v Olivo, 82 NY2d 202 [1993]) is clear that future earnings paid after the commencement of the matrimonial action are not marital property. The Court of Appeals in Olivo (supra) analyzed a situation involving a corporate insurance package granted to an employee which altered preexisting pension benefits and created new retirement incentives, all occurring after commencement of a divorce action.
The Court in Olivo (supra) distinguished between modification of pension payments earned and accrued during the marriage, which understandably remained marital under the deferred income theory established in Majauskas v Majauskas (61 NY2d 481 [1984]), and new compensation created after commencement of the action.
The reasoning of Olivo (supra) is applicable in this case. The disability payments are not deferred income. The right to receive these payments is based on the defendant’s postcommencement disability; and his continued right to receive them is created each month, contingent upon his continued disability.
Nor does the payment of premiums from marital funds alter the status of the disability insurance payments as separate property (Fleitz v Fleitz, 200 AD2d 874 [3d Dept 1994]).
Accordingly, under either theory, these payments are not *350 marital property and the plaintiff has no rights in the defendant’s disability insurance payments.
For the purposes of equitable distribution, I find that the plaintiff should be credited with the declared value of the jewelry and furs. Domestic Relations Law § 236 (B) (5) (d) (11) and (12) specify that "the court shall consider * * * the wasteful dissipation of assets by either spouse” and "any transfer or encumbrance made in contemplation of a matrimonial action without fair consideration”. Here, the plaintiff produced no documentary evidence of any of the transactions, nor were they reported in her tax returns as required by law. Accordingly, it is appropriate to credit her with receipt of the value of these items in making an over-all distribution between the parties (see, Contino v Contino, 140 AD2d 662 [2d Dept 1988]). Since the plaintiff has already received $257,000 in furs and jewelry and has her intact retirement account available to her, I determine that no further equitable distribution is called for.
Indeed, considering the foregoing, since I have decided not to make any adjustment in the marital credit card liability ($43,000) and the 1984 unincorporated business tax claim ($38,000), both claims remaining the defendant’s obligation under this decision, the share of the net marital estate distributed to plaintiff is far greater than the defendant’s share.
Domestic Relations Law § 236 (B) (5) (d) (1)-(12) set out the factors that a court shall consider in determining equitable distribution of property. I shall analyze these factors against the facts as I find them to be here.
In terms of factor (1), neither party had significant property at the time of the marriage. With respect to factor (2), this is a relatively short marriage (seven years) and defendant’s health is worse than the plaintiff’s. The defendant has a severe gastroesophageal illness; the plaintiff is basically healthy with a minor heart arrhythmia. Factors (3) and (4) are inapplicable. Factor (5), maintenance is discussed infra. With respect to factor (6), outside of the defendant’s initial need for money, plaintiff contributed little or nothing to Galyn’s success; nor were her services as a spouse of consequence here. There is little in the record to support the notion that the plaintiff took care of the home while the defendant devoted himself to Galyn’s activities. Factor (7) relating to "the liquid or non-liquid character of all marital property” is not an issue. Concerning factor (8), the probable future financial circum *351 stances of each party, they are each capable of being self-supporting. Factor (9) is irrelevant. There are no tax consequences affecting equitable distribution here, except for an unincorporated business tax liability from 1984 (factor [10]). The parties are jointly and severally liable for that liability, but I have determined that the liability should be borne by the defendant. I find that with respect to the description of the jewelry and furs, that the plaintiff committed waste (factor [11]) and her activities in this regard implicate factor (12) — transfers made without adequate consideration.
The application of the factors described does not mandate any specific type of distribution. Particularly given the parties’ respective circumstances, and since the parties allocated their property entitlements along the way, there is no reason for this court to interfere with the internal distribution despite the disparity that exists.
Finally, with respect to plaintiff’s claim for maintenance the following facts are relevant. Justice Glen’s 1991 pendente lite order provided that "the husband shall pay the cost of an appropriate educational program (which may include the Wood Business School) and the cost of such program, not to exceed $800 per month, shall be added to the $4,200 basis figure.” The fact remains that the plaintiff has not availed herself of this remedial option, having utterly failed to take any steps to prepare herself for gainful employment.
The standard of living during the marriage is not a factor here, since it is admitted by both litigants that they lived substantially beyond their means during that time period and because defendant is now a graduate student involved in a new discipline.
Here, we have a seven-year, childless marriage, a severe curtailment of the defendant’s business income (see, Rubin v Rubin, 105 AD2d 736), the fact that the plaintiff has already received nearly three years of substantial tax-free temporary maintenance, and the fact that the plaintiff has received a distribution of at least $150,000 more than the defendant has received. Under these circumstances, and based on my finding that the plaintiff has found gainful employment in the past and is capable of becoming self-supporting, I determine that she is entitled to permanent maintenance for one year from the date of entry of the judgment to be prepared in accordance with this decision, at a monthly rate of $2,500, tax free.
*352 The defendant has requested a hearing on the issue of plaintiffs entitlement to counsel fees. Counsel are directed to contact the Clerk of Part 18 to arrange first for a conference on this issue.