Opinion
CHIN, J.
Retirement benefits attributable to service rendered during a marriage are community property. In this case, the husband, a firefighter, has retirement benefits that are part community property and part his own separate property. During the time of the marriage, he exercised his right to purchase four years’ worth of additional retirement credit for his premarital military service. He had to pay to obtain this additional credit, which he elected to do in installments, some of which came from community property. The value of the additional credit substantially exceeds the cost of obtaining it. We must decide how much, if any, of the value of the four additional years of credit is community property.
What matters in determining whether retirement benefits are community or separate property is the person’s marital status when the services on which *1133 the benefits are based were rendered. Here the husband rendered the military service before the marriage. Accordingly, we conclude that, except for the community’s contribution to the cost of obtaining the credit, the four years of additional credit are the husband’s separate property.
The trial court ordered the husband to pay the wife one-half of the amount the community expended to obtain the credit plus interest. We conclude that the trial court acted within its discretion in using this method to compensate her for her share of the community’s interest in the property. We reverse the judgment of the Court of Appeal, which reached a different conclusion.
I. Facts and Procedural History
We draw these facts largely from the Court of Appeal opinion.
Timothy P. Green (husband) served in the United States Air Force for four years, from July 23, 1982, to May 1, 1986. On June 16, 1989, he began working as a firefighter for the Dougherty Regional Fire Authority in Dublin, which participated in the California Public Employees’ Retirement System (CalPERS). At that time, husband had the right to buy up to four years of service credit towards his retirement benefits for his military service. Husband married Julie R. Green (wife) in May 1992.
In July 1997, the Dougherty Regional Fire Authority merged with the Alameda County Fire Department, which also participates in CalPERS. Husband continued to work for the Alameda County Fire Department.
On August 1, 2002, husband exercised his right to buy four years of service credit for his military service. He elected to pay for the purchase under an installment plan, paying $92.44 twice each month through payroll deductions for 15 years, scheduled to end in July 2017. Before the parties separated on October 1, 2007, $11,462.56 of community funds had been used toward the purchase of the military service credit.
Wife filed a petition for dissolution of the marriage in March 2008. The parties disputed whether to characterize husband’s military service credit as separate or community property. After a trial, the trial court ordered that the military service credit portion of husband’s CalPERS pension be awarded to him as his separate property. The court also ordered husband to pay wife $6,699.54, representing half of the installment payments made with community funds toward the military service credit, plus interest at the rate of 6 percent.
Wife appealed,. challenging the characterization of the military service credit as husband’s separate property. The Court of Appeal reversed the *1134 judgment. It concluded that “because the military service credit was purchased with community funds during the parties’ marriage, it was community property” and remanded the case to the trial court to determine the proper allocation of that property.
We granted husband’s petition for review.
II. Discussion
We recently summarized the applicable legal principles. In general, all property that a spouse acquires during marriage before separation is community property. (Fam. Code, §§ 760, 770.) Community property may include the right to retirement benefits that the employee spouse accrues as deferred compensation for services rendered. The right to retirement benefits is a property interest. To the extent that such a right derives from service during marriage before separation, it is a community asset. We review de novo the trial court’s characterization of service credit as community or separate property. (In re Marriage of Sonne (2010) 48 Cal.4th 118, 124 [105 Cal.Rptr.3d 414, 225 P.3d 546] (Sonne).)
Husband is a member of CalPERS. “Members of CalPERS, once vested, participate in a defined benefit retirement plan, which supplies a monthly retirement allowance under a formula comprising factors such as final compensation, service credit (i.e., the credited years of employment), and a per-service-year multiplier. The retirement allowance consists of an annuity (which is funded by member contributions deducted from the member’s paycheck and interest thereon) and a pension (which is funded by employer contributions and which must be sufficient, when added to the annuity, to satisfy the amount specified in the benefit formula).” (Sonne, supra, 48 Cal.4th at p. 121.)
Government Code section 21024 permits those who work for an agency that elects to be subject to the section to obtain up to four years of additional credit towards their retirement allowance for “public service,” which includes service in the United States military. (See id., subds. (a), (c), (e), (f).) This public service is to be credited “as it would be credited if the member had been in state service during his or her public service.” (Gov. Code, § 21034.) Government Code section 21024 was enacted in 1995 as part of the Public Employees’ Retirement Law. (Stats. 1995, ch. 379, § 2, pp. 1955, 2133-2134; see Gov. Code, § 20000.) But it is derived from an earlier statute containing similar provisions. (Gov. Code, former § 20930.3, added by Stats. 1974, ch. 1437, § 1, p. 3142.)
Government Code section 21024, subdivision (b), requires those who elect to receive the additional credit for public service to contribute money in order *1135 to receive it. During the marriage, husband elected to obtain the four years of military service credit for which he was eligible and arranged to make the required contribution in installment payments, some of which came from community property. We must decide whether the credit for the military service is community property or husband’s separate property.
Two recent cases from this court guide us. In In re Marriage of Lehman (1998) 18 Cal.4th 169 [74 Cal.Rptr.2d 825, 955 P.2d 451] (Lehman), the husband and wife had been married during part, although not all, of the time the husband worked and accumulated retirement benefits. At the time the husband retired, after dissolution of the marriage, his employer offered an “enhanced retirement program” to encourage early retirement. The program included “the crediting of three putative years of service.” (Lehman, supra, at p. 175.) We described these putative years as “fictive—they have no independent existence, but are merely a means by which the employer effects the enhancement.” (Id. at p. 188.) Although the employer offered the enhanced program only after the marriage had dissolved, we found the three years’ additional credit to be, in part, community property.
We explained that, “if the right to retirement benefits accrues, in some part, during marriage before separation, it is a community asset and is therefore owned by the community in which the nonemployee spouse as well as the employee spouse owns an interest.” (Lehman, supra, 18 Cal.4th at p. 179.) “It follows that a nonemployee spouse who owns a community property interest in an employee spouse’s retirement benefits owns a community property interest in the latter’s retirement benefits as enhanced. That is because, practically by definition, the right to retirement benefits that accrues, at least in part, during marriage before separation underlies any right to an enhancement.” (Id. at pp. 179-180.) “[W]hat is determinative is the single concrete fact of time. To the extent—and only to the extent—that an employee spouse accrues a right to property during marriage before separation, the property in question is a community asset.” (Id. at p. 183.)
We cited with approval a New York case that had explained that a pension right owned as community property is, by its nature, subject to modification by future actions of either the employee or the employer. (Lehman, supra, 18 Cal.4th at pp. 183-184, citing Olivo v. Olivo (N.Y. 1993) 82 N.Y.2d 202 [604 N.Y.S.2d 23, 624 N.E.2d 151, 155].) Accordingly, “ ‘both parties’ rights are generally subject to changes in the terms of a retirement plan, as well as to circumstances largely beyond their control, such as the salary level finally achieved by the employee and used to calculate the pension benefit. What the nonemployee spouse possesses, in short, is the right to share in the pension as it is ultimately determined. . . . [Any] enhancement’ in the amount is a ‘modification of an asset not the creation of a new one.’ ” (Lehman, supra, at p. 184, quoting Olivo v. Olivo, supra, at p. 155, italics added by Lehman.)
*1136 In Sonne, supra, 48 Cal.4th 118, the husband transferred to a former wife several years of service credit that had accrued during the former marriage. The former wife exercised her right to collect a refund of the accumulated contributions in the retirement account, which permanently waived her rights to any further claim on the husband’s retirement benefits. Later, the husband, then remarried, exercised his right to redeposit the same contributions into the account, thereby regaining the years of service credit he had previously transferred to the former wife. Some of the money used to redeposit the contributions was community property from the second marriage. When the second marriage was dissolved, “the question arose: What was the community’s share of the service credit from the [former] marriage?” (Id. at p. 121.) The trial court had found that, to the extent community funds from the second marriage were used for the redeposit, the service credit was the second marriage’s community property. We took a different view.
We agreed with the argument of an amicus curiae “that since community funds contributed only to the annuity component of the retirement allowance, the community was entitled only to a pro tanto share of the annuity—and not to a share of the much larger pension component, which was funded by employer contributions.” (Sonne, supra, 48 Cal.4th at p. 121.) We explained that “a redeposit of member contributions for a prior period of service does not constitute consideration for the service credit for that period; it is merely a condition precedent to a credit for that previously rendered service. (See Gov. Code, § 20756.) The service credit (and the pension component of the retirement allowance) are more correctly described as ‘ “a form of deferred compensation for services rendered.” ’ (In re Marriage of Skaden (1977) 19 Cal.3d 679, 686 [139 Cal.Rptr. 615, 566 P.2d 249].) The trial court’s analysis gave no weight whatsoever to the service Husband rendered as a deputy sheriff during those years, all of which preceded the [second] marriage.” (Id. at p. 125.)
We found instructive In re Marriage of Lucero (1981) 118 Cal.App.3d 836 [173 Cal.Rptr. 680] (Lucero), which, we said, “involved almost the mirror image of the present case.” (Sonne, supra, 48 Cal.4th at p. 125.) As we explained, in Lucero, “the husband redeposited his federal employee retirement contributions after he and his wife had separated, using his own separate funds. Part of the redeposited contributions related to service years during the marriage. (Lucero, supra, 118 Cal.App.3d at p. 839.) In rejecting the husband’s claim that the increase in his retirement benefit due to the redeposit was entirely his separate property, the Court of Appeal recognized that the substantial increase in the husband’s retirement benefit ‘was possible only as consideration for the husband’s service’ during the marriage (id. at p. 841) and that ‘ “the community owns all pension rights attributable to employment during the marriage.” ’ (Id. at p. 842.) Accordingly, the court *1137 concluded that the wife had a right ‘to share in the increased retirement benefits upon payment of her pro rata share of the redeposit.’ (Ibid.)” (Sonne, supra, at p. 125.)
The service credit at issue in Sonne, “by contrast, was not attributable to employment during the [second] marriage. Rather, it was earned during [the husband’s former] marriage and was originally an asset of that community.” (Sonne, supra, 48 Cal.4th at p. 126.) Because the husband had received that property as his own separate property, it had remained his separate property at the time of the second marriage. (Ibid., citing In re Marriage of Stenquist (1978) 21 Cal.3d 779, 788 [148 Cal.Rptr. 9, 582 P.2d 96] [“that portion of the husband’s pension attributable to employment before marriage” is separate property].)
We further explained that the husband had “retained, as his separate property, a right to recoup that service credit in the event [the former wife] were to withdraw the assets in her nonmember account. (See In re Marriage of Brown (1976) 15 Cal.3d 838, 846, fn. 8 [126 Cal.Rptr. 633, 544 P.2d 561] [‘The law has long recognized that a contingent future interest is property [citation] no matter how improbable the contingency ...’]; In re Marriage of Joaquin (1987) 193 Cal.App.3d 1529, 1533 [239 Cal.Rptr. 175] [‘ “ ‘property to which one spouse has acquired an equitable right before marriage is separate property, though such right is not perfected until after marriage . . .’’”].) [The former wife] did just that (see Gov. Code, § 21292), and Husband elected to exercise his right to redeposit his member contributions plus interest. (See id., §§ 20750, 20751.) Had he made that redeposit with separate property funds, the recouped service credit would unquestionably have been his separate property.” (Sonne, supra, 48 Cal.4th at p. 126.) Accordingly, “the right to recover the prior service credit was Husband’s separate property.” (Ibid.)
We concluded in Sonne that “the community had a claim only on the annuity component relating to the time period of the [former] marriage, and was entitled only to a pro tanto share of that portion of Husband’s retirement allowance.” (Sonne, supra, 48 Cal.4th at pp. 127-128.) “The remainder of the retirement allowance is supplied by the pension, which derives from the contributions of the employer and which, the record shows, is several orders of magnitude larger than the accumulated member contributions. The [second marriage’s] community did not contribute to that larger component of the retirement allowance, and it was therefore an abuse of discretion to award any share of it to the community.” (Id. at p. 128.)
A treatise has aptly distilled the rule derived from these cases: “Pension and retirement benefits are a form of employment compensation and *1138 thus tantamount to ‘earnings.’ As such, regardless of when the benefits ‘vest’ or are received, they are characterized in accordance with the employee’s marital status at the time the services were rendered; i.e., the benefits are community property to the extent attributable to employment during marriage.” (2 Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2012) ¶ 8:141, p. 8-43 (rev. # 1, 2011).) Here, husband rendered his military service before the marriage, making the military service credit his separate property.
Wife argues the military service credit was an enhanced retirement benefit like the one in Lehman, supra, 18 Cal.4th 169, that we determined was partly community property. But this case is not similar to Lehman. In Lehman, the enhanced credits were based on “Active” years (id. at p. 188, italics omitted), not real ones, and, accordingly, were attributable in part to years of work during the marriage. Here, husband served in the military rather than as a firefighter during the time in question. Government Code section 21034 treats that military service as if it had been service as a firefighter. In that limited sense, the military credit is Active. But in the sense we used the term in Lehman, the years of credited service are not Active. Those years are attributable to specific, actual years of military service that husband rendered before the marriage.
To designate a portion of those four years of credit as community property—as did the Court of Appeal—solely due to the community’s contribution towards the required payment gives no weight to husband’s premarital service to his country. (See Sonne, supra, 48 Cal.4th at p. 125.) But Government Code section 21034 specifically mandates that this military service is to be credited “as it would be credited if the member had been in state service during” that service. This demonstrates a legislative intent to fully credit persons for their military service. The four years of military service should be treated the same the way the years at issue in Sonne and Lehman were treated—basing the characterization of the credit on the marital status at the time of the service.
In Sonne, we were able to discern from the record that the payment from community funds went towards the annuity portion of the retirement benefits and not towards the far greater pension portion, which the employer paid. (Sonne, supra, 48 Cal.4th at pp. 127-128.) The situation is less clear in this case. On this record, it is difficult to determine exactly how the required contribution was calculated and what it paid for. The Court of Appeal believed that, unlike the situation in Sonne, husband had to pay both the employee’s and the employer’s contribution. But it explained that obtaining the credit was nonetheless beneficial because “whatever method was used to set [husband’s] contribution to purchase military service credit, he was able to *1139 purchase it based on his salary at the time of hire, but he will receive payment for the service credit based on his salary upon retirement.”
Wife stated in the trial court that the credit’s value was about $140,000, far more than the cost of the contributions, and husband seemed to accept that figure, although it is not clear how either arrived at it. An amicus curiae brief from the Northern California chapter of the American Academy of Matrimonial Lawyers filed in the Court of Appeal argues that the value of the credit was far greater than the cost of obtaining it, resulting in a “significant subsidy” that someone other than husband would have to pay, “and that someone must, by default, be the employer or CalPERS.” An amicus curiae brief from certified family law specialist Barbara A. DiFranza filed in this court argues that the same annuity/pension dichotomy described in Sonne, supra, 48 Cal.4th at pages 127-128, governs this case.
Ultimately, it does not matter exactly how the contribution was calculated or what it paid for. It is clear the value of the four years of credit far exceeds the cost of obtaining it. Indeed, the difference in value is precisely what the parties are fighting over. The trial court awarded wife her share of the community’s contribution plus interest, but she seeks instead a share of the four years’ worth of credit itself. As the Lucero court said regarding the redeposit of that case, purchasing the four years of military service “was obviously a great bargain.” (Lucero, supra, 118 Cal.App.3d at p. 841.) And this bargain “was possible only as consideration for husband’s service” in the United States military—service that predated the marriage. (Ibid.) The difference in value was not due to what the community contributed—part of the installment payments—but to what husband brought to the community—his military service. For these reasons, the difference in value between the four years’ worth of credit and the cost of obtaining it is husband’s separate property, subject to reimbursement for the community’s contribution to the cost of obtaining the credit.
In reaching a contrary conclusion, the Court of Appeal found (and wife argues) that even after husband “started working for a CalPERS participant, and thus became eligible to purchase military service credit based on his premarital service in the military, his right to such credit amounted to no more than an ‘expectancy,’ which is not a property right divisible upon dissolution of marriage.” (Citing In re Marriage of Brown, supra, 15 Cal.3d at pp. 844—845 (Brown).) To place this argument in perspective, we must take a step back in time.
Before the landmark decision of Brown, supra, 15 Cal.3d 838, which put California law regarding the property status of retirement benefits on the road it has followed ever since, the rule had been “that nonvested pension rights *1140 are not property, but a mere expectancy, and thus not a community asset subject to division upon dissolution of a marriage.” (Id. at p. 841, italics added, citing French v. French (1941) 17 Cal.2d 775, 778 [112 P.2d 235] (French).) We noted in Brown that a Court of Appeal decision had explained that under this “French rule,” “ ‘[t]o the extent that payment is, at the time of the divorce, subject to conditions which may or may not occur, the pension is an expectancy, not subject to division as community property.’ ” (Brown, supra, at p. 844, quoting Williamson v. Williamson (1962) 203 Cal.App.2d 8, 11 [21 Cal.Rptr. 164].) Brown held that “the French rule cannot stand because nonvested pension rights are not an expectancy but a contingent interest in property .... Pension rights, whether or not vested, represent a property interest; to the extent that such rights derive from employment during coverture, they comprise a community asset subject to division in a dissolution proceeding.” (Brown, supra, at pp. 841-842.) Accordingly, we overruled French and disapproved Court of Appeal cases that followed it, including Williamson v. Williamson, supra, 203 Cal.App.2d 8. (Brown, supra, at pp. 841, 851, fn. 14.)
We later summarized Brown’s new rule: “Under California law, retirement benefits earned by a spouse during a marriage are community property, subject to equal division upon the dissolution of that marriage. (In re Marriage of Brown[, supra,] 15 Cal.3d 838, 842 . . . .) This is true whether the benefits are vested or nonvested, matured or immature. (Brown, supra, at p. 842.)” (In re Marriage of Gillmore (1981) 29 Cal.3d 418, 422 [174 Cal.Rptr. 493, 629 P.2d 1], fn. omitted.)
In explaining why previous courts had erred in finding nonvested pension rights to be a mere expectancy rather than a property interest, we said in Brown that the “term expectancy describes the interest of a person who merely foresees that he might receive a future beneficence, such as the interest of an heir apparent [citations], or of a beneficiary designated by a living insured who has a right to change the beneficiary [citations]. As these examples demonstrate, the defining characteristic of an expectancy is that its holder has no enforceable right to his beneficence.” (Brown, supra, 15 Cal.3d at pp. 844-845, fn. omitted.) We contrasted such nonenforceable expectancies with retirement benefits, which are property rights. We explained “that an employee acquires a property right to pension benefits when he enters upon the performance of his employment contract.” (Id. at p. 845.) Nonvested retirement benefits are certainly contingent on various events occurring—such as continued employment—but this does not prevent them from being a property right for these purposes. “The fact that a contractual right is contingent upon future events does not degrade that right to an expectancy. The law has long recognized that a contingent future interest is property [citation] no matter how improbable the contingency (see Civ. Code, § 697); *1141 an expectancy, on the other hand, ‘is not to be deemed an interest of any kind.’ (Civ. Code, § 700.)” (Id. at p. 846, fn. 8.)
To call the right to obtain the credit for military service a mere expectancy rather than a property interest divisible on dissolution of the marriage is to regress to the pre-Brown days of French, supra, 17 Cal.2d 775, and Williamson v. Williamson, supra, 203 Cal.App.2d 8. The Court of Appeal based its conclusion that the right was a mere expectancy on the fact that, until exercised, the right was subject to certain contingencies. It argued that before husband exercised his right to obtain the credit, all that existed was “a possible expectancy that if Timothy continued to work for a CalPERS participant, and if [Government Code] section 21024 remained in effect, and if Timothy’s employer continued to offer the option to buy military service credit pursuant to the statute, and if Timothy paid the requisite amount, he would be entitled to the benefit of the credit he purchased.”
But much the same can be said of the right to redeposit contributions in Sonne, supra, 48 Cal.4th 118, and Lucero, supra, 118 Cal.App.3d 836. In Sonne, for example, the husband’s right to redeposit his member contributions was contingent on the former wife’s withdrawing the assets in her nonmember account. (Sonne, supra, 48 Cal.4th at p. 126.)
The interest at issue in Lehman, supra, 18 Cal.4th 169, faced far greater contingencies than those the Court of Appeal cited here. Unlike husband’s right to obtain credit for military service, the enhanced retirement program in Lehman did not even exist until after the marriage had been dissolved. During the marriage itself, any property right in the enhanced program was subject to the rather significant contingency that it later be created. But nevertheless, we found the enhanced benefits to be a property interest that was partly community property because the service on which it was based was partly rendered during the marriage. We explained that retirement benefits are, by their nature, subject to later changes, and that the nonemployee spouse possesses the right to share in the benefits as they are ultimately determined. (Id. at pp. 183-184.)
The contingencies the Court of Appeal cited do not degrade a property right to a mere expectancy. (Brown, supra, 15 Cal.3d at p. 846, fn. 8.) Unlike the hopeful heir apparent we cited in Brown as having a mere expectancy, husband here could enforce his right to receive the military credit any time he chose. This right was a property interest. Because husband rendered the service on which the credit was based before the marriage, it was his separate property, except to the extent the community contributed to the payments necessary to obtain it.
*1142 As the trial court recognized, wife does have an interest in the contributions the community made towards obtaining the military service credit. In a dissolution proceeding, the court must apportion an employee spouse’s retirement benefits between the spouses’ community property interest and any separate property interest the employee spouse may have. The court has discretion to choose the method of apportionment as long as the result is reasonable and fairly represents the relative contributions of the community and separate estates. (Sonne, supra, 48 Cal.4th at p. 124; Lehman, supra, 18 Cal.4th at p. 187.) To compensate wife for her interest, the court ordered husband to pay her an amount of money representing half of the payments made with community funds plus interest. Doing so came within the court’s discretion. The court’s order was reasonable and fairly represented the relative contributions of the community estate (making some of the installment payments) and the separate estate (rendering the four years of military service on which the credit was based).
Wife argues that she is entitled to more than simply reimbursement of the community contribution towards the purchase price. She cites cases in which one spouse had purchased a house before marriage, paying part of the purchase price and taking a loan for the balance, and the community helped pay off the loan. In that situation, the spouse who had not originally purchased the house is entitled to more than mere reimbursement of the community payments. “Where community funds are used to make payments on property purchased by one of the spouses before marriage ‘the rule developed through decisions in California gives to the community a pro tanto community property interest in such property in the ratio that the payments on the purchase price with community funds bear to the payments made with separate funds.’ ” (In re Marriage of Moore (1980) 28 Cal.3d 366, 371-372 [168 Cal.Rptr. 662, 618 P.2d 208], quoting Forbes v. Forbes (1953) 118 Cal.App.2d 324, 325 [257 P.2d 721].)
These cases do not apply here. When one spouse purchases a house before marriage but also takes out a loan for part of the purchase price, that spouse, in effect, brings to the marriage only part of a house—the value of the house minus the size of the loan. In effect, the community itself purchases some of the house by paying off the loan. In that situation, when the community contributes much towards the equity in the house, the party bringing part of a house to the community should not be awarded all of the equity. The situation here is different. Husband brought to the marriage all of his four years of military service—not just part of it with a loan due on the rest. The trial court acted within its discretion in apportioning the separate and community interests as it did.
*1143 III. Conclusion
We reverse the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with this opinion.
Kennard, J., Baxter, J., and Corrigan, J., concurred.