Palaia v Palaia (2018 NY Slip Op 01076)





Palaia v Palaia


2018 NY Slip Op 01076


Decided on February 14, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 14, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
JOHN M. LEVENTHAL
HECTOR D. LASALLE
VALERIE BRATHWAITE NELSON, JJ.


2016-00943
 (Index No. 13372/97)

[*1]Antonia Palaia, appellant, 
v
Vincent Palaia, respondent.


McGovern, Connelly & Davidson, New Rochelle, NY (Frank H. Connelly, Jr., of counsel), for appellant.
Albert J. Pirro, Jr., White Plains, NY, for respondent.



DECISION & ORDER
Appeal from an order of the Supreme Court, Westchester County (Janet C. Malone, J.), dated December 4, 2015. The order, insofar as appealed from, granted those branches of the defendant's motion which were, in effect, for determinations that, pursuant to the parties' stipulation of settlement dated August 22, 1997, which was incorporated but not merged into a judgment of divorce dated October 9, 1997, the plaintiff was entitled to a 50% share of the value of one of his 401(k) accounts as of the date of the execution of the stipulation of settlement, and was not entitled to any share of the value of his supplemental employee retirement plan, and denied the plaintiff's cross motion to enforce the stipulation of settlement by directing the defendant to pay her a 50% share of the value of the subject 401(k) account and the supplemental employee retirement plan as of the date of his retirement, with interest at the statutory rate from the date of his retirement.
ORDERED that the order is modified, on the law, (1) by deleting the provisions thereof granting those branches of the defendant's motion which were, in effect, for determinations that, pursuant to the parties' stipulation of settlement, the plaintiff was entitled to a 50% share of the value of the subject 401(k) account as of the date of the execution of the stipulation of settlement, and was not entitled to any share of the value of his supplemental employee retirement plan, and substituting therefor provisions denying those branches of the defendant's motion, and (2) by deleting the provisions thereof denying those branches of the plaintiff's cross motion which were to enforce the stipulation of settlement by directing the defendant to pay her a 50% share of the value of the subject 401(k) account and the supplemental employee retirement plan as of the date of his retirement, and substituting therefor provisions granting those branches of the plaintiff's cross motion; as so modified, the order is affirmed insofar as appealed from, with costs to the plaintiff.
The parties were divorced by judgment dated October 9, 1997. They had entered into a stipulation of settlement dated August 22, 1997, which was incorporated but not merged into the judgment of divorce. The stipulation provided, in relevant part, that the defendant had a 401(k) account "with a value as of 12/31/96 of $77,146.00; the [plaintiff] shall be entitled to one half of the aforesaid sum under a Qualified Domestic Relations Order to be prepared by the [plaintiff]'s attorney." The stipulation further provided that the defendant had a supplemental employee retirement plan (hereinafter SERP), and that the plaintiff "shall be entitled to one half of the value [*2]of said plan as of 12/31/96 under a Qualified Domestic Relations Order to be prepared by the [plaintiff]'s attorney."
In 2002, the Supreme Court entered a qualified domestic relations order (hereinafter QDRO). The QDRO stated that "[t]he parties consent to the submission of this order to the Court," and it was signed by the court and the attorneys for both parties. As relevant, the QDRO provided that the plaintiff would be entitled to a portion of the accumulation of assets in the subject 401(k) account and SERP, based on a Majauskas-type formula (see Majauskas v Majauskas, 61 NY2d 481). The QDRO provided that those benefits were to be paid to the plaintiff in a "lump sum" upon the actual retirement of the defendant.
In 2014, the defendant moved, inter alia, in effect, for a determination that, pursuant to the stipulation of settlement, the plaintiff was entitled to a 50% share of the value of the subject 401(k) account as of the date of the execution of the stipulation of settlement. He also contended that the plaintiff was entitled to a 50% share of the value of the SERP as of the date of the execution of the stipulation of settlement, and that, since the SERP had no value on the date of the execution of the stipulation of settlement, the plaintiff was not entitled to any portion of the SERP. He also argued that the SERP was not marital property subject to distribution. The plaintiff cross-moved to enforce the stipulation of settlement by directing the defendant to pay her a 50% share of the value of the subject 401(k) account and the SERP as of the date of his retirement, with interest at the statutory rate from the date of his retirement on March 1, 2014. In the order appealed from, the Supreme Court granted those branches of the defendant's motion, and denied the plaintiff's cross motion. The plaintiff appeals.
"A stipulation of settlement is a contract, enforceable according to its terms" (Stein v Stein, 130 AD3d 604, 605; see Klein v Klein, 134 AD3d 1066, 1068). Where a stipulation of settlement is susceptible of differing interpretations and is thus ambiguous, a court is "entitled to rely upon the language of the entire agreement and the circumstances surrounding its execution in construing the provision" (Noren v Babus, 144 AD3d 762, 764; see Springer v Springer, 125 AD3d 842, 843; Kurtz v Johnson, 54 AD3d 904, 905).
Here, the stipulation of settlement, which provides that "the [plaintiff] shall be entitled to one half of the value of [the SERP] as of 12/31/96 under a Qualified Domestic Relations Order," is ambiguous. On the one hand, since the SERP, by definition, did not fund until the date of the defendant's retirement, and had a zero balance as of December 31, 1996, that language could be construed to mean that the plaintiff's share of the SERP was one-half of zero, entitling her to nothing. On the other hand, that language could be construed to mean that the plaintiff was to receive a rough Majauskas share of the SERP upon the defendant's eventual retirement, pursuant to a QDRO, based on the length of the parties' marriage to a December 31, 1996, cut-off. Indeed, the plaintiff and the defendant each advocate these competing interpretations here. Courts must interpret matrimonial stipulations of settlement using the standards of contract interpretation (see Rainbow v Swisher, 72 NY2d 106, 109; Kraus v Kraus, 131 AD3d 94, 100; Penavic v Penavic, 88 AD3d 671, 672). A QDRO can only convey rights agreed upon by the parties in their underlying stipulation of settlement (see McCoy v Feinman, 99 NY2d 295, 304; Kraus v Kraus, 131 AD3d at 100; Berardi v Berardi, 54 AD3d 982, 985). Courts "cannot reform an agreement to conform to what it thinks is proper, if the parties have not assented to such a reformation" (Cohen-Davidson v Davidson, 291 AD2d 474, 475; see Tamburello v Tamburello, 113 AD3d 752; Cappello v Cappello, 286 AD2d 360; Tinter v Tinter, 96 AD2d 556, 557). Here, however, the parties assented to a reformation of their stipulation of settlement in a manner that resolves the ambiguity of its SERP language by mutually consenting to the language of the QDRO that was entered by the Supreme Court in 2002. The QDRO states that the parties "consent[ed] to the submission of th[e] order," and it was signed by the attorneys representing both parties. The QDRO directed the use of a standard Majauskas formula for dividing, inter alia, the SERP. While the terms of a QDRO must ordinarily yield to the terms of an underlying matrimonial stipulation of settlement or judgment (see Kraus v Kraus, 131 AD3d at 100-101; Berardi v Berardi, 54 AD3d at 986), here, the circumstances warrant otherwise as the QDRO resolved an ambiguity in the language of the underlying stipulation, and further, was submitted for entry upon the consent of both [*3]parties. Our conclusion is consistent with Olivo v Olivo (82 NY2d 202). In Olivo, the Court of Appeals held that an ex-wife was not entitled to a marital portion of her ex-husband's social security bridge payment or a separation incentive payment from his employer, as the bridge and separation incentive programs did not exist until after the parties had divorced (see id. at 208). In contrast, here, the defendant's SERP, while not yet "funded" during the marriage, did exist during and after the marriage, subject to its later vestiture, with the plaintiff's entitlement to her marital share confirmed by the parties' QDRO, entered on consent. Likewise, the provision in the stipulation of settlement regarding the subject 401(k) account is ambiguous. It can be read to entitle the plaintiff to a one-half share of a fixed sum that existed at the time the stipulation was prepared, or alternatively, its reference to the preparation of a QDRO allows for an interpretation that the parties intended a Majauskas division of the value of that account on the date of the defendant's retirement. As with the SERP, the ambiguity of the language was resolved by the QDRO, entered on the consent of the parties, which specified that the plaintiff was entitled to a standard Majauskas share of the 401(k) account.
Accordingly, the Supreme Court should have interpreted the stipulation of settlement in light of the 2002 QDRO, which granted to the plaintiff a one-half share, as per the formula set forth therein, in the subject 401(k) account and SERP as of the date of the retirement of the defendant (see Noren v Babus, 144 AD3d at 764; Springer v Springer, 125 AD3d at 843; Kurtz v Johnson, 54 AD3d at 905).
The Supreme Court properly denied that branch of the plaintiff's cross motion which sought interest at the statutory rate from the date of the defendant's retirement (see O'Donnell v O'Donnell, 153 AD3d 1357; Lundon v Lundon, 120 AD3d 1395, 1397).
The defendant's remaining contention is without merit.
DILLON, J.P., LEVENTHAL, LASALLE and BRATHWAITE NELSON, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court