Filed 10/27/14  Marriage of Ketaily CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of MARJORIE ANNE and MICHAEL EDWARD KETAILY. | 2d Civil No. B251916 (Super. Ct. No. D261068) (Ventura County) |
| MARJORIE ANNE KETAILY,<br><br>    Appellant,<br><br>v.<br><br>MICHAEL EDWARD KETAILY,<br><br>    Respondent. | |

Marjorie Anne Ketaily (Wife) appeals from the trial court's order clarifying that the Marital Settlement Agreement (MSA) and Qualified Domestic Relations Order (QDRO) between Wife and Michael Edward Ketaily (Husband), do not award Wife a community property interest in certain deferred retirement benefits available to Husband. After reviewing the matter de novo, we conclude the community holds an interest in the benefits at issue.  Accordingly, we reverse.

*Facts*

Husband began his employment with the Los Angeles City Fire Department (LAFD) in August 1980.  He and Wife were married in May 1987 and separated in April

1

1998.  Husband first became eligible to retire in August 2000.  He did not retire and remains employed by LAFD.

*The Parties' Marital Settlement Agreement*

On December 26, 2000, the parties entered into their MSA, which was incorporated into a judgment of dissolution.  The MSA divides the parties' assets and liabilities and includes their agreement that, "All income, earnings, employment benefits, or other property received or acquired by either Party to this Agreement after date of separation shall be the sole and separate property of the receiving or acquiring Party."

The MSA acknowledges that Husband is a member of the City of Los Angeles' pension system for fire fighters and was already eligible to retire.  The agreement awards Wife "one-half of the community interest in Husband's pension/retirement plan, including her community share in all pension, retirement, death and survivorship benefits."  It defines the community interest as "that fraction of each benefit (including early retirement subsidies and benefits) that HUSBAND is entitled to under such plan which is calculated by dividing the total number of months credited by the plan to the HUSBAND during marriage to date of separation by the total number of months HUSBAND was credited by said plan.  The community interest shall be determined using the maximum intervivos benefit allowed to HUSBAND under the plan unless the Parties agree in writing signed by both parties to some other option under the plan.  Husband is restrained and enjoined from selecting options which reduce this benefit . . . .  This Agreement and any court order in accordance herewith applies to all benefits and payments due and payable under the terms and provisions of the plan, including without limitation, cost of living adjustments and death or survivorship benefits."

Wife acknowledges that Husband may work after his first eligibility to retire.  "If he does so, Husband is not required to pay Wife her share of the pension until Husband has thirty (30) years of service, or retires, whichever first occurs.  If Wife chooses to receive her share of Husband's pension benefits after thirty (30) years of service she shall contact Husband in writing at least thirty (30) days prior to the date said

2

payments are to commence in the event Husband continues employment after thirty (30) years of service." The parties further agreed, "The court shall retain jurisdiction over the Parties, Claimant and the Retirement Plan to issue all further orders and to supervise distribution of pension benefits."

*The Domestic Relations Order*

On January 4, 2001, the trial court filed a Stipulated Domestic Relations Order Re: Respondent's Los Angeles City Fire Department Pension and Retirement Benefits (QDRO). Like the MSA, the QDRO provides that "the community interest in [Husband's] entitlement to a service pension from the Plan shall be determined by dividing the years of service used in computing his service pension entitlement that are attributable to the period that [Husband] was married to [Wife] before separation (Marital Service) by the total years of service used in computing [Husband's] service pension entitlement (Total Service); the resultant percentage then shall be multiplied by the amount of [Husband's] service pension entitlement including any cost of living increases, to arrive at the community interest therein[.]" Wife is awarded "one-half of the community interest so established " and "any allowable cost of living adjustments shall be made applicable thereto." The QDRO further provides, "the remainder of [Husband's] pension entitlement is awarded to [Husband] as his separate property."

*Husband's Employment and Retirement*

Husband began his employment with the LAFD in August 1980. He first became eligible to retire in August 2000. In May 2002, two years after the trial court entered the judgment of dissolution, the City of Los Angeles created the Deferred Retirement Option Program (DROP) for members of the Los Angeles Fire and Police Pension program. Husband entered the DROP in February 2010. While participating in DROP, Husband makes his usual monthly payroll contribution to the general pension fund. He is scheduled to leave the DROP and terminate his employment as a member of the LAFD on February 27, 2015.

3

*The DROP*

The terms under which sworn employees of the City of Los Angeles fire and police departments members may participate in DROP, and the benefits available to those participants, are defined in the Los Angeles Administrative Code. The Administrative Code describes DROP as "an alternative method of benefit accrual in the Retirement System as set forth in this chapter." (LA Admin. Code, § 4.2100, subd. (a).) It provides participating members "access to a lump sum benefit in addition to their normal monthly retirement allowance at their actual retirement, which occurs when employment as a sworn member with the City is terminated. DROP is intended to be cost neutral regarding plan funding." (LA Admin. Code, § 4.2100, subd. (b).)

A member who elects to participate in DROP must: "(1) Determine a beginning date upon which to enter DROP . . . and agree to terminate employment as a sworn member . . . on the last day of their participation in DROP . . . . Members may stay in DROP for a maximum of 5 years (60 months) . . . . [¶] (2) Cease, from and after the date the member begins participating in DROP, to accrue additional retirement benefits, either through service accruals, future pay increases, active cost of living adjustments or promotions. [¶] (3) Agree the member's service retirement formula, including years of service and pension base, and all other eligibility conditions, including eligibility for survivor benefits, will be frozen at the time the member enters DROP. [¶] . . . . [¶] (4) Have an amount equal to 100% of the service retirement benefit the member would have received if he/she had retired at the time of entering DROP placed in a nominal account ('DROP account'). [¶] (5) Receive benefits from the Fire and Police Pension Plan upon termination of City employment as a sworn member of the Fire or Police Department at the time and in the manner provided in this Chapter." (LA Admin. Code, § 4.2101, subd. (c).)

Each participating member's DROP account is "a 'nominal' account" established within the general fund of the pension plan. Benefits accrued by the member pursuant to the DROP are accounted for in the member's DROP account, but the member "shall not have a claim on the assets of [the pension plan] with respect to his or her

4

DROP account, nor shall there be any assets set aside for any DROP participant, which are separate from all other Pension Plan assets." (LA Admin. Code, § 4.2102, subd. (a).) The member's DROP account is credited each month with an amount equal to the member's "monthly service pension," cost of living adjustments, and interest at the rate of five percent annually. (LA Admin. Code, § 4.2102, subd. (c).) No money may be paid to any person from the DROP account until the member actually terminates his or her employment. (LA Admin. Code, § 4.2102, subd. (d).)

Both the City and the individual member participating in DROP continue to make contributions to the pension plan. Those contributions are "deposited into and become part of the general assets" of the pension plan. (LA Admin. Code, § 4.2103, subd. (b), (c).) "Member contributions will not be deposited into nor become part of the member's DROP account." (LA Admin. Code, § 4.2103, subd. (b).) Similarly, "No City contributions will be credited to the member's DROP account." (LA Admin. Code, § 4.2103, subd. (c).) After the member "retires and simultaneously leaves DROP, the member will thereafter receive a monthly service pension benefit based upon the years of service and pension base at the time of entry into DROP and COLAs granted while in DROP, plus future COLAs according to the member's Tier." (LA Admin. Code, § 4.2103, subd. (d).)

When the member terminates his or her participation in DROP and leaves his or her employment, the member is entitled to receive: "(1) a monthly retirement allowance in the amount determined under the Charter that was credited monthly to the member's DROP account at the date of termination of DROP participation, including any applicable COLA; and [¶] (2) all amounts credited to the member's DROP account . . . ." (LA Admin. Code, § 4.2106, subd. (a).) Payment from the DROP account is made in a lump sum. Alternatively, the member may "elect a direct rollover of the proceeds in their DROP account to an eligible retirement plan . . . ." (LA Admin. Code, § 4.2106, subd. (b).)

*Contentions*

Husband contends the money credited to his DROP account is his separate property because the City created the DROP long after Husband and Wife separated and their MSA provides, "All income, earnings, employment benefits, or other property received or acquired by either Party to this Agreement after date of separation shall be the sole and separate property of the receiving or acquiring Party." He further notes that all of the payroll contributions he made to the pension plan after he entered the DROP are his separate property. Wife contends she is entitled to her share of the funds credited to Husband's DROP account because the funds credited to that account are based on Husband's entire service retirement benefit and the community holds an interest in that benefit because it is based, in part, on service rendered during the marriage.

Husband filed a Motion for Clarification, asking the trial court to find the funds credited to his DROP account were his separate property. The trial court granted the motion, finding the DROP account "is entirely Husband's separate property and a benefit accrued post-separation with separate property funds." According to the trial court, Wife's community interest in Husband's retirement plan "was determined" when the MSA and QDRO were filed. Husband entered the DROP long after separation and his DROP account is, the trial court found, "funded with Husband's portion of his pension, as well as funds from the General Fund of the city of Los Angeles." There was, in the trial court's view, "no admissible evidence that the funds allocated to Wife in the [MSA] and QDRO were used to fund Husband's Drop account." The trial court concluded, "the instant Judgment in 2000 contemplates all earnings and employment benefits after the date of separation shall be the sole and separate property of the receiving or acquiring party. This was followed up with a QDRO in early 2001 fixing the benefit. It is clear to this court by the plain meaning of the Judgment that the DROP account in the instant case is entirely a separate property asset acquired post-separation and should be confirmed 100% to Husband. Wife has no interest in Husband's DROP account."

6

We review de novo the trial court's characterization of Husband's DROP benefits as community or separate property. (*In re Marriage of Green* (2013) 56 Cal.4th 1130, 1134.) Our Supreme Court recently summarized the applicable legal principles. In general, "all property acquired by a spouse during marriage prior to separation is community property. (Fam. Code, §§ 760, 770.) Community property 'may include the right to retirement benefits accrued by the employee spouse as deferred compensation for services rendered. . . . The right to retirement benefits "represents[s] a property interest; to the extent that such [a] right derive[s] from employment during marriage before separation, it comprises a community asset. . . ." ' " (*In re Marriage of Sonne* (2010) 48 Cal.4th 118, 124.)

When the right to retirement benefits accrues, even in part, during marriage, "it is a community asset and is therefore owned by the community in which the nonemployee spouse as well as the employee spouse owns an interest." (*In re Marriage of Lehman* (1998) 18 Cal.4th 169, 179 (*Lehman*).) "It follows that a nonemployee spouse who owns a community property interest in an employee spouse's retirement benefits owns a community property interest in the latter's retirement benefits as enhanced. That is because, practically by definition, the right to retirement benefits that accrues, at least in part, during marriage before separation underlies any right to an enhancement." (*Id.* at pp. 179-180.) Events that occur after separation may affect the amount of retirement benefits an employee spouse receives, but not their character as community property. (*Id.* at p. 183.) Once the employee spouse has accrued a right to retirement benefits during marriage, "the benefits themselves are stamped a community asset from then on." (*Id.*) A subsequent enhancement in the amount of the retirement benefit "is a 'modification of an asset not the creation of a new one.' " (*Id.* at p. 184, quoting *Olivo v. Olivo* (1993) 82 N.Y.2d 202, 209-210.)

*In re Marriage of Davis* (2004) 120 Cal.App.4th 1007 (*Davis*), considered whether benefits accruing to a Los Angeles police officer under the same DROP program we consider here were separate or community property. The *Davis* court concluded that

the right of the husband, the employee spouse, to participate in the DROP was community property because he accrued years of service required for both retirement and participation in DROP during the marriage. The wife "undisputedly owns a community property interest in [husband's] retirement benefits, and therefore owns a community property interest in his retirement benefits as enhanced. [Husband's] right to participate in the DROP enhancement would not exist but for his having accrued the retirement rights that he did during the parties' marriage." (*Davis, supra*, 120 Cal.App.4th at p. 1017.)

After concluding the husband's right to participate in DROP was a community property asset, the court in *Davis* considered how that participation impacted the wife's right to spousal support. Under the terms of their MSA, the husband was required to continue to pay spousal support " 'until . . . the date [the wife] receives the first payment that reflects her 25% interest in [the husband's] pension.' " (*Davis, supra* at p. 1019.) The court concluded the husband was required to continue paying spousal support while he participated in DROP because, "A monthly credit being made to [husband's] DROP account does not constitute [wife's] receiving a payment reflecting her interest in his pension." (*Id.* at p. 1019.) Instead, DROP "was simply an enhancement to [husband's] retirement benefits, which induced him to continue working for the LAPD rather than retiring when eligible and actually drawing monthly pension payments, and also working elsewhere to earn a salary." (*Id.*)

We agree with *Davis* that Wife "owns a community property interest in [Husband's] retirement benefits, and therefore owns a community property interest in his retirement benefits as enhanced[]" by DROP. When Husband entered the DROP, he agreed that, while he participated in the DROP, he would continue to make monthly contributions to the general pension fund as he had previously. (LA Admin. Code, § 4.2103, subd. (a).) Those contributions are deposited into and become part of the pension plan. They are not deposited into, and do not become part of the member's DROP account. (LA Admin. Code, § 4.2103, subd. (b).) Husband's nominal DROP account is credited each month with "an amount equal to 100% of the service retirement

8

benefit the member would have received if he/she had retired at the time of entering DROP . . . ."  (LA Admin. Code, § 4.2101, subd. (c)(4).)  In effect, Husband's nominal DROP account holds his monthly retirement benefit until Husband exits the DROP, when he receives those benefits in a lump sum.  Wife has a community property interest in Husband's monthly retirement benefit.  While Husband participates in DROP, that monthly retirement benefit is deposited into his nominal DROP account.  Wife has the same proportional community property interest in the benefits that are credited to Husband's nominal DROP account as she has in his other retirement benefits.

Husband contends the amounts credited to his DROP account are his separate property because both the DROP itself, and his own eligibility to participate in it came into existence after the parties separated.  The MSA provides:  "All income, earnings, employment benefits, or other property received or acquired by either Party to this Agreement after date of separation shall be the sole and separate property of the receiving or acquiring Party."   We reject this argument for the reason stated in *Davis*.  Husband's eligibility to participate in the DROP is not a new benefit; it is an enhancement of the retirement benefits for which Husband was eligible during the marriage.  Moreover, the parties' MSA awards Wife one half of the community interest in Husband's retirement plan, including her "community share in all pension, retirement, death and survivorship benefits."  Husband's eligibility for the DROP is a retirement benefit.  The agreement further provides that it "applies to all benefits and payments due and payable under the terms and provisions" of the pension plan.  The DROP is one such benefit.

Nothing in the parties' QDRO mandates a different result.  The order defines the community interest in Husband's retirement benefits based on Husband's years of service during the marriage and his total years of service.  It awards Wife one-half of the community interest.   Husband's participation in DROP does not affect the community's proportional interest in this retirement benefit because he ceased to accrue service credits and his service retirement formula was frozen when he entered DROP. (LA Admin. Code, § 4.2101, subd. (c)(2), (c)(3).)

9

Husband's participation in DROP neither increases nor decreases his monthly service retirement benefit.  Instead, the program allows Husband to continue working and collect his full salary while simultaneously receiving credit each month for his full retirement benefit.  At the end of Husband's participation in DROP, all of the funds credited to his nominal DROP account will be distributed in a lump sum.  The DROP account functions as a savings account for the retirement benefits credited to Husband during his participation in DROP.  All of those funds are attributable to Husband's retirement benefit.  The parties' MSA and QDRO award Wife a portion of that retirement benefit.  She is therefore entitled to the same portion of the funds credited to Husband's DROP account.

*Conclusion*

The trial court's order dated September 16, 2013 is reversed.  Costs to Wife.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

10

Roger L. Lund, Judge

Superior Court County of Ventura

_____

Mathew Auric, for Appellant.

Judith D. Rhodes, Mercedes E. Blunt, for Respondent.