[819 NE2d 1036, 786 NYS2d 420]

SANDRA KAZEL, Appellant, v SUSANA CORSELLO KAZEL, as Administrator of the Estate of ROBERT KAZEL, Deceased, Respondent.

Argued October 20, 2004; decided November 18, 2004

**POINTS OF COUNSEL**

*Adorante, Turner & Associates,* Camillus (*Anthony P. Adorante* of counsel), for appellant. Plaintiff is entitled to a supplemental qualified domestic relations order providing for a division of the death benefit provision of the decedent's pension plan. (*Irato v Irato,* 288 AD2d 952; *Moran v Moran,* 289 AD2d 544; *De Gaust v De Gaust,* 237 AD2d 862; *Samaroo v Samaroo,* 193 F3d 185.)

*Sugarman Law Firm, LLP,* Syracuse (*Timothy J. Perry* of counsel), for respondent. I. The Appellate Division properly affirmed the IAS court in concluding that plaintiff is not entitled to a share of death benefits under her former husband's Niagara Mohawk pension plan, and that there is no proper basis to amend the qualified domestic relations order. (*McCoy v Feinman,* 99 NY2d 295; *Egelhoff v Egelhoff,* 532 US 141; *Fort Halifax Packing Co. v Coyne,* 482 US 1; *Pilot Life Ins. Co. v Dedeaux,* 481 US 41; *Hokanson v Office of Personnel Mgt.,* 122 F3d 1043; *Majauskas v Majauskas,* 61 NY2d 481; *Irato v Irato,* 288 AD2d 952; *Keith v Keith,* 241 AD2d 820; *Wojtowicz v Wojtowicz,* 171 AD2d 1073; *Moran v Moran,* 289 AD2d 544.) II. No amendment of the 1990 order may be made to qualify the order as a qualified domestic relations order for survivor benefits after Robert Kazel's death. (*Samaroo v Samaroo,* 193 F3d 185; *Hopkins v AT & T Global Info. Solutions Co.,* 105 F3d 153; *Ablamis v Roper,* 937 F2d 1450.)

**OPINION OF THE COURT**

Chief Judge KAYE.

A judgment of divorce and qualified domestic relations order (QDRO) awarding an interest in the husband's pension plan do not automatically include preretirement death benefits available under the plan. If the intent is to distribute such benefits, that should be separately, and explicitly, stated.

After 28 years of marriage, Robert and Sandra Kazel were divorced in 1991. In accordance with a final posttrial judgment distributing the marital property by, among other things, divid-

ing the husband's pension plan between the parties pursuant to the equitable distribution formula established in *Majauskas v Majauskas* (61 NY2d 481 [1984]),[1] the matrimonial court entered a QDRO directing that plaintiff wife begin to receive a fixed percentage of her former husband's monthly allowance either at such time as he "has retired from and is actually receiving a monthly allowance from his . . . Pension Plan" or, at plaintiff's option, "after the earlier to occur of the first date for payments allowed under the plan or after [he] reaches the earliest retirement age under the Plan."

Robert Kazel died in 2001 before reaching retirement age, and therefore never received any payments under the plan. Following his death, plaintiff sought to share with decedent's widow in preretirement death benefits payable under decedent's pension plan. Because the QDRO, by its plain terms, granted plaintiff an interest only in decedent's retirement annuity, and not in his death benefits, the plan administrator denied plaintiff any share of those benefits.

Plaintiff, conceding that the QDRO failed to grant her an interest in her former husband's death benefits, sought to modify or supplement the QDRO to award her a share of such benefits. Supreme Court denied the motion, concluding that plaintiff had failed to establish that the intent of the underlying divorce decree had been to award her survivor benefits. The Appellate Division, one Justice dissenting, affirmed and granted leave to appeal to this Court, certifying the following question: "Was the order of this Court entered December 31, 2003, properly made?" We answer in the affirmative, and therefore affirm.

## Discussion

The Employee Retirement Income Security Act of 1974 (29 USC § 1001 *et seq.*) (ERISA) and the Internal Revenue Code of 1986 (IRC) require all pension plans to provide survivor benefits to a participant's surviving spouse (*see* ERISA [29 USC] § 1055

---

1. *Majauskas* held that vested rights in a noncontributory pension plan are marital property to the extent they were acquired between the date of the marriage and the commencement of a matrimonial action, and that the matrimonial court may therefore order distribution to one spouse of an equitable portion of that part of the present value of the other spouse's pension rights earned during marriage, or may provide that upon maturity of the pension rights the recipient pay a portion of each payment received to the former spouse (*see* 61 NY2d at 485-486).

[a]; Internal Revenue Code [26 USC] § 401 [a] [11]; § 417). Pursuant to a divorce, however, a QDRO can provide that a former spouse be treated as a surviving spouse—to the exclusion of the actually surviving spouse if, as here, the decedent had remarried—for purposes of ERISA and the joint and survivor rules of the IRC (*see* ERISA [29 USC] § 1056 [d] [3] [F]; Internal Revenue Code [26 USC] § 401 [a] [11]; §§ 417, 414 [p] [5] [A]).[2] Thus, a former spouse can overcome the right of an actually surviving spouse to receive a survivor annuity only if specifically awarded such benefits by the matrimonial court. Further, such an award must be reflected in a QDRO, evidenced by clear language designating the former spouse as the surviving spouse for purposes of the survivor benefits. The QDRO must reflect the intent of the underlying judgment of divorce, and must comply with its terms.

Although plaintiff contends that the phrase "pension plan," as contained in the underlying judgment of divorce, can encompass both retirement annuities and survivor benefits, the law is otherwise.

In *McCoy v Feinman* (99 NY2d 295, 303 [2002]), we explained that *"Majauskas can* govern equitable distribution of preretirement death benefits earned during the marriage, but mere mention of *Majauskas* does not by itself establish the parties' intent to allocate those benefits" (emphasis in original). As we stated then and underscore now, pension benefits and death benefits are two distinct matters. Both ERISA and the IRC treat them as separate interests, and we therefore hold that reference to a pension plan or pension benefits will not be deemed to include death benefits. Indeed, even "a stipulation's conclusory representation that the parties agreed to allocate to the nonemployee spouse all the benefits available . . . under the applicable section of the Internal Revenue Code—which authorizes but does not mandate assignment of survivor benefits (*see* 26 USC § 414 [p])—does not evince the parties' intent to distribute each such benefit" (*McCoy*, 99 NY2d at 303 [internal quotation marks omitted]). Rather, any distribution of survivor benefits should be explicitly stated.

Plaintiff's attempt to distinguish this case from *McCoy* is unavailing. There, the stipulation of settlement "clearly

---

2. Of course, a QDRO can provide that the former spouse receive all or only a portion of the survivor benefits, in which case the benefits would be shared with the actually surviving spouse.

expressed the parties' intention to award plaintiff *retirement benefits* under the plan. Critically, however, in no way did the stipulation provide or even suggest that the parties had agreed to allocate to plaintiff *preretirement death benefits*, and we cannot read the stipulation as if it had" (99 NY2d at 303 [emphasis in original]). Because the stipulation "was not ambiguous and did not cover preretirement death benefits, it did not entitle plaintiff to receive those benefits; nor did the judgment, which merely incorporated that stipulation" (*id.*).

True, *McCoy* involved a stipulation between the parties, rather than a decree issued after trial. But that distinction is immaterial. Fundamentally, the issue in *McCoy* was whether a stipulation, silent as to death benefits, could be read to reflect an intent to include such benefits. We held that it could not. Similarly, a divorce decree, silent as to death benefits, cannot be read to include them.

Whether the matrimonial court should have, or would have, equitably distributed the preretirement benefits, the fact remains that it did not.[3] In the absence of evidence that the death benefits were ever considered by the matrimonial court, we will not infer from silence in the underlying trial record—let alone contrary language in the QDRO—that the intent of the court was other than to provide plaintiff with a share of any benefits actually received by her former husband during his lifetime, or that the matrimonial court's reference in its amended decision to "pension interests"—which clearly *were* meant to be divided—included death benefits. Although plaintiff would have us presume that death benefits are meant to be included within a distribution of pension benefits in the absence of an express provision excluding them, the law requires the contrary presumption.

Since the underlying judgment fails to reflect an express intent by the matrimonial court to distribute the death benefits, the QDRO was not, as plaintiff asserts, carelessly drafted, but rather correctly reflects—as it must—the terms of the decree from which it arises.

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

---

**3.** On this record, the failure of the judgment of divorce to distribute preretirement death benefits is unsurprising. It appears that no evidence was adduced at trial with respect to any value, or even the existence, of such benefits.

Judges G.B. Smith, Ciparick, Rosenblatt, Graffeo, Read and R.S. Smith concur.

Order affirmed, etc.