[14 NYS3d 55]

Carol Kraus, Appellant, v Richard Kraus, Respondent.

Second Department, July 8, 2015

APPEARANCES OF COUNSEL

*Magda M. Deconinck*, New York City (*Glass Krakower, LLP [John Hogrogian]*, of counsel), for appellant.

*Kelli M. O'Brien*, Goshen, for respondent.

**OPINION OF THE COURT**

DILLON, J.P.

We address for the first time in the Appellate Division, Second Department, the question of whether the submission for judicial approval of a proposed qualified domestic relations order (hereinafter QDRO), instead of a motion made on notice, may be employed by a party to a matrimonial action to obtain pension arrears. We hold that a QDRO may be used for such a purpose.

Relevant Facts

The plaintiff Carol Kraus and the defendant Richard Kraus were married in 1973, and have four adult children. During a portion of the marriage, the plaintiff was employed by the State of New York as a hospital nurse. The defendant was employed by the Fire Department of the City of New York (hereinafter the FDNY) as a firefighter from 1977 to 2008. As a firefighter, the defendant was a member of a pension system for much of the parties' marriage. The plaintiff was also a member of a pension system as a state employee.

In 1993, the plaintiff commenced this matrimonial action against the defendant in the Supreme Court, Orange County, seeking a divorce and ancillary relief. On November 1, 1995, the parties reached a settlement, pursuant to which each spouse was entitled, inter alia, to a marital share of the other spouse's pension in accordance with the formula set forth in *Majauskas v Majauskas* (61 NY2d 481 [1984]). The parties executed a 28-page stipulation of settlement containing all the terms of the settlement including, in Article XV thereof, the division of the parties' pensions pursuant to the *Majauskas* formula. Article XV (c) of the stipulation recited that the defendant had commenced his employment with the FDNY on August 13, 1977, and provided that the plaintiff's *Majauskas* share would be based on 50% of the marital portion of his pension that had accumulated over a period of 13 years, 7 months, and 7 days, representing the period of time during the mar-

riage in which the defendant had been employed by the FDNY and accrued his pension. The stipulation also expressly provided that "[a] Qualified Domestic Relations Order shall be prepared in the course of any divorce and forwarded to the Court for signature and filed with the Husband's employer." A judgment of divorce was signed by the Supreme Court on February 21, 1996, which incorporated, but did not merge, the stipulation. Less than a year after entry of the judgment, the defendant submitted a proposed QDRO to the court in order to effectuate payment of his share of the plaintiff's pension. The defendant's proposed QDRO, which calculated his share of the plaintiff's pension pursuant to the *Majauskas* formula, was signed by the court on January 24, 1997. However, for unknown reasons, no proposed QDRO was initially submitted by the plaintiff in connection with her share of the defendant's pension, which also was to be calculated pursuant to the *Majauskas* formula.

Several years passed. The defendant remarried and continued to work for the FDNY until his retirement on March 1, 2008. The plaintiff alleged that she was never notified of the defendant's retirement. After the divorce was finalized, but prior to his retirement, the defendant took out a loan against his pension, which had an outstanding balance of $8,503.24 at the time of his retirement. To repay the loan, the defendant's overall retirement pension was therefore reduced by the plan administrator of the New York Fire Department Pension Fund (hereinafter the FDNY pension plan) by the sum of $848.58 per year. The maximum possible pension was further reduced by the defendant's election of a survivorship benefit in favor of his second wife. The loan repayment and survivorship deductions reduced the annual pension benefits received by the defendant from a maximum amount of $65,926.56 to $58,887.03. The reduction concomitantly reduced the plaintiff's share of the defendant's overall pension, which was calculated, according to the terms of the parties' stipulation, as 22.3% of the total.

On August 29, 2012, approximately 6½ years after the Supreme Court signed the judgment of divorce and 4½ years after the defendant's retirement, the plaintiff learned of the defendant's retirement, and submitted a proposed QDRO to the Supreme Court for settlement and signature. During the time between the defendant's retirement and the plaintiff's submission of the proposed QDRO, the defendant had been

receiving his pension without any deduction for the plaintiff's share under the *Majauskas* formula, as contemplated by the stipulation and final judgment of divorce. The plaintiff's proposed QDRO called for two mathematical calculations, to which the defendant objected. First, it proposed that the plaintiff's 22.3% share of the defendant's pension be calculated against its maximum potential annual allowance of $65,925.56, rather than against the actual annual allowance of $58,887.03. The plaintiff employed the higher pension amount on the ground that the defendant's loan and survivorship deductions were unilaterally incurred by the defendant, and not contemplated by the parties in the stipulation. Second, the proposed QDRO called for the defendant to pay the pension arrears accumulated from March 1, 2008, to September 1, 2012, which totaled $66,157.02, by means of monthly payments in the same amount as were to be paid during the period of arrearage.

The defendant opposed the plaintiff's proposed QDRO and submitted his own proposed QDRO, with cross notice of settlement. The defendant's proposed QDRO directed payment to the plaintiff of her *Majauskas* share of the actual, reduced retirement benefit, necessarily reflecting the deductions for the pension loan repayments and election of the survivorship option. The defendant's proposed QDRO included no provision for the payment of arrears accumulated between March 1, 2008, and September 1, 2012. In submitting his proposed QDRO to the Supreme Court for settlement and signature, the defendant argued that QDROs perform the limited function of enforcing pension-related provisions of divorce judgments and, therefore, cannot be employed to resolve collateral matters such as arrears. The defendant also argued that, as to the pension loan and survivorship reductions, the parties never expressly agreed that such reductions were prohibited, and that the plaintiff's proposed QDRO could not therefore be employed to impose new obligations not previously agreed upon.

On March 26, 2013, the Supreme Court signed the defendant's proposed QDRO, and that QDRO was entered on April 19, 2013. Accordingly, the plaintiff began receiving her *Majauskas* share of the defendant's pension, as reduced by the loan repayment and by the defendant's election to take his pension benefits subject to his second wife's right of survivorship. However, the Supreme Court did not direct the defendant to pay any arrears to the plaintiff.

The plaintiff appeals from the QDRO. She argues that the Supreme Court erred in failing to award her arrears, as QDROs may provide for retroactive relief, and an award of arrears was required to fulfill the parties' stipulated intention of equitably dividing the defendant's pension upon his retirement. The plaintiff also argues that the defendant may not be permitted to reduce the value of her share of his pension by deducting therefrom the value of loans and survivorship adjustments that were not authorized by the terms of the parties' settlement. The defendant maintains, inter alia, that arrears can only be properly sought via a separate motion made on notice or the commencement of a plenary action to enforce the stipulation and final judgment of divorce, and that the terms of the parties' settlement did not prohibit the defendant from taking a loan against anticipated pension proceeds, or from choosing a right of survivorship in favor of his second wife.

For reasons set forth below, we modify the QDRO to the extent of awarding the plaintiff pension arrears accumulated between the defendant's retirement on March 1, 2008, and March 26, 2013, the date that the QDRO appealed from was signed. We also direct that the plaintiff's share of the defendant's pension benefits be calculated as if there were no reduction in monthly benefits arising from the loan made to the defendant.

Legal Analysis

Pensions represent a form of deferred compensation paid after retirement in lieu of the receipt of greater compensation during the period of employment (*see Majauskas v Majauskas*, 61 NY2d at 491-492; *Pagliaro v Pagliaro*, 31 AD3d 728, 729 [2006]). "Under controlling law, pension benefits, 'except to the extent that they are earned or acquired before marriage or after commencement of a matrimonial action, constitute marital property' " (*Nugent-Schubert v Schubert*, 88 AD3d 967, 968 [2011], quoting *Dolan v Dolan*, 78 NY2d 463, 466 [1991]). They are assets of the marriage that both spouses expect to enjoy at a future date (*see Dolan v Dolan*, 78 NY2d at 466). Indeed, the concept of pension benefits as marital property is "consistent with the concept of equitable distribution which rests largely on the view that marriage is, among other things, an economic partnership to which each party has made a contribution" (*Dolan v Dolan*, 78 NY2d at 466; *see McDermott v McDermott*, 119 AD2d 370, 379 [1986]). So, too, enhanced or supplemental retirement income, such as Variable Supplements Fund

benefits, commonly known as VSF benefits, that accrued during the marriage, and cost-of-living adjustments, commonly known as COLAs, constitute marital property in which the nonemployee spouse is entitled to an equitable share, even if the parties' stipulation did not expressly mention those items (*see DeLuca v DeLuca*, 97 NY2d 139, 145-146 [2001]; *Raynor v Raynor*, 90 AD3d 1009, 1010 [2011]; *Luongo v Luongo*, 50 AD3d 858, 859 [2008]; *Condon v Condon*, 46 AD3d 596, 598 [2007]; *Pagliaro v Pagliaro*, 31 AD3d at 730). Conversely, distinct and separate interests, such as preretirement death benefits (*see Kazel v Kazel*, 3 NY3d 331, 335 [2004]), payments of benefits pursuant to Social Security Bridge Retirement Insurance, and separation payments (*see Olivo v Olivo*, 82 NY2d 202, 208-209 [1993]) are not subject to equitable distribution because they do not qualify as forms of deferred compensation. In order for a nonemployee spouse to be entitled to a share of any separate interests of the employee spouse that are independent of retirement benefits, the parties must make a specific provision for such entitlement in their settlement agreement (*see Pagliaro v Pagliaro*, 31 AD3d at 730).

A stipulation of settlement that is incorporated but not merged into a judgment of divorce is a contract subject to principles of contract construction and interpretation (*see Penavic v Penavic*, 88 AD3d 671, 672 [2011]; *Zuchowski v Zuchowski*, 85 AD3d 777, 778 [2011]; *Ackermann v Ackermann*, 82 AD3d 1020 [2011]; *Hepburn v Hepburn*, 78 AD3d 1001, 1001-1002 [2010]; *Rosenberger v Rosenberger*, 63 AD3d 898, 899 [2009]). If an agreement is clear and unambiguous on its face, "the intent of the parties must be gleaned from the four corners of the instrument, and not from extrinsic evidence" (*Rosenberger v Rosenberger*, 63 AD3d at 899; *see Johnson v Johnson*, 99 AD3d 765, 766 [2012]). "When the distribution of pension benefits between former spouses is accomplished through a QDRO obtained pursuant to a stipulation, such QDRO 'can convey only those rights to which the parties stipulated as a basis for the judgment' " (*Berardi v Berardi*, 54 AD3d 982, 985 [2008], quoting *McCoy v Feinman*, 99 NY2d 295, 304 [2002]; *see Coulon v Coulon*, 82 AD3d 929 [2011]). If a QDRO is inconsistent with the provisions of a stipulation or judgment of divorce, courts possess the authority to amend the QDRO "to accurately reflect the provisions of the stipulation pertaining to the pension benefits" (*Berardi v Berardi*, 54 AD3d at 986; *see Watson v Watson*, 84 AD3d 1067 [2011]). Thus, a court cannot

issue a QDRO "encompassing rights not provided in the underlying stipulation" (*Coulon v Coulon*, 82 AD3d at 929, quoting *McCoy v Feinman*, 99 NY2d at 304), or one that is more expansive than the stipulation.

Although the stipulation in this matter failed to identify the party who would be responsible for submitting the proposed QDROs to the Supreme Court, it is generally the responsibility of the party seeking approval of the QDRO to submit it to the court with notice of settlement (*see Auriemmo v Auriemmo*, 87 AD3d 1090, 1091 [2011]; *accord Denaro v Denaro*, 84 AD3d 1148, 1149 [2011]). Here, with respect to the defendant's pension, Article XV of the parties' stipulation provided that

> "at the time that the Husband retires the Wife shall receive her proportionate share of the pension pursuant to the case of *Majauskas v Majauskas*. A Qualified Domestic Relations Order shall be prepared in the course of any divorce and forwarded to the Court for signature and filed with the Husband's employer."

It further provided that the plaintiff's *Majauskas* share would be based on "fifty (50%) percent of the value of the pension for 13 years, 7 months and 7 days." Article XV (d) of the parties' stipulation included a similar provision with respect to the defendant's *Majauskas* share of the plaintiff's pension.

The plain language of the stipulation indicates that the plaintiff's entitlement to a distributive share of the defendant's pension was to be triggered at the time of the defendant's retirement. While the stipulation did not explicitly direct the plaintiff to prepare and submit her proposed QDRO, a logical reading of the relevant language leads to the conclusion that she was to prepare and submit, to the Supreme Court, a proposed QDRO with respect to the defendant's pension, and provide a copy to his employer, and the defendant was to prepare and submit, to the Supreme Court, a proposed QDRO with respect to the plaintiff's pension, and provide a copy to her employer. The defendant prepared and submitted his proposed QDRO to the court, and provided the plaintiff's employer with a conformed copy, but the plaintiff did not initially do the same with respect to her proposed QDRO. Had the plaintiff prepared a proposed QDRO, submitted it to the court for signature, and provided a conformed copy to the FDNY or the FDNY pension plan shortly after the judgment of divorce was finalized, her right to receive her distributive share

of his pension would have been secured regardless of any delay in learning of the defendant's retirement. The QDRO would have been on file with the defendant's employer and, upon his retirement, the pension administrator of the FDNY pension fund would have immediately begun making payments to the plaintiff of her proportionate share of the defendant's pension benefits.

Despite the plaintiff's delay in submitting a proposed QDRO to the Supreme Court, we reject the defendant's contention that the plaintiff is not entitled to the arrears in pension benefits that accumulated between March 1, 2008, the date that the defendant retired from the FDNY, to March 26, 2013, the date that the Supreme Court signed the plaintiff's proposed QDRO. An action to enforce a distributive award in a matrimonial action is governed by a six-year statute of limitations (*see* CPLR 213 [1], [2]; *Bayen v Bayen*, 81 AD3d 865, 866 [2011]). However, this Court, in both *Bayen* and *Denaro*, made clear that since a QDRO is derived from the bargain struck by the parties, there is no need to commence a separate, plenary action to formalize the agreement, and that "an application or motion for the issuance of a QDRO is not barred by the statute of limitations" (*Denaro v Denaro*, 84 AD3d at 1149; *see Bayen v Bayen*, 81 AD3d at 866; *Duhamel v Duhamel*, 4 AD3d 739, 741 [2004]).

While this Court has not previously addressed the precise issue of whether a court can amend a previously issued QDRO to provide for payment to the nonemployee spouse of pension benefits that accumulated between the time of the employee spouse's date of retirement and the date of the issuance of the QDRO, the Appellate Division, Third Department, in *Boylan v Dodge* (42 AD3d 632 [2007]), expressly stated that a request for judicial approval of "a QDRO is the proper method for plaintiff to collect the pension arrears in this case" (*id.* at 633). The Third Department relied upon its own earlier precedent in *Peek v Peek* (301 AD2d 201 [2002]), in which it rejected a defendant's contention that the plaintiff was not entitled to receive arrears because she failed to submit a proposed QDRO to the court, as directed by the separation agreement. There, the defendant received final approval for a disability pension in March 1998, but the plaintiff did not seek the issuance of a QDRO until November 2000. The Third Department determined that the plaintiff did not waive her right to receive "her property interest in defendant's pension beginning in March

1998" (*id.* at 204) merely by failing to file a proposed QDRO immediately after the judgment of divorce was finalized, and that the submission of a proposed QDRO to the court with the final divorce papers "is not a condition precedent to plaintiff receiving her property interest in defendant's pension" (*id.* at 204-205). The Court explained that the time at which the plaintiff was to receive her portion of the pension began when the defendant started receiving his pension benefits in March 1998. Thus, the plaintiff would not receive a windfall by collecting the arrears, but, rather, would receive "her property based on the clear intent of the separation agreement" (*id.* at 205).

We note that the Appellate Division, Fourth Department, in *Bielecki v Bielecki* (106 AD3d 1454 [2013]), reached a different conclusion on the issue of whether the statute of limitations applied to a plaintiff's postjudgment motion seeking arrears for her share of the defendant's pension benefits. In that action, the defendant began receiving his pension benefits in March 1991. However, the plaintiff was unaware of his retirement, and she did not begin to receive her share until she secured a QDRO in October 2005, 14 years later. In October 2010, the plaintiff moved to recover her share of the pension benefits accrued from March 1991 to October 2005. The Fourth Department, unlike this Court in *Denaro* and *Bayen*, expressly concluded that the six-year statute of limitations applied, and began to run when defendant began receiving his pension in March 1991. However, because the defendant had an ongoing obligation to the plaintiff, the statute began to run anew with each missed payment. Thus, the Fourth Department determined that the plaintiff's claim was timely to the extent that it sought payments missed within six years prior to her October 2010 motion.

█ We adhere to our precedent in *Bayen*, and agree with the Third Department's reasoning in *Boylan v Dodge* and *Peek v Peek*, which warrants our conclusion that the QDRO here in dispute be modified to reflect the plaintiff's entitlement to her distributive share of the defendant's pension, pursuant to the *Majauskas* formula, from March 1, 2008, until March 26, 2013. The parties' stipulation expressly provided that the plaintiff would receive her proportionate marital share of the defendant's pension at the time the defendant retired. Thus, like the plaintiff in *Peek*, the plaintiff here acquired a property interest in the defendant's pension at the time he retired and started

receiving benefits. By receiving payments referable to that period of time, the plaintiff will not be enjoying a windfall, but will simply be receiving the property that she was entitled to receive from March 2008 forward, pursuant to the clear language of the stipulation. We further note that even if the six-year statute of limitations applied to a postjudgment motion in a matrimonial action, as the Fourth Department held in *Bielecki,* the plaintiff's claim would not be time-barred because she submitted her proposed QDRO to the Supreme Court in July 2012, just four years after the defendant retired in March 2008.

We note that there is also no requirement under Uniform Rules for Trial Courts (22 NYCRR) § 202.48 or otherwise that proposed QDROs be submitted within 60 days of the execution of a stipulation of settlement of a matrimonial action or the issuance of a judgment of divorce, as QDROs are merely procedural mechanisms for effectuating payment of a spouse's share of the other spouse's pension (*see Denaro v Denaro*, 84 AD3d at 1149; *Lawton v Lawton*, 239 AD2d 866 [1997]).

The plaintiff contends that the QDRO should contain a provision calculating her proportionate share of the defendant's pension on its maximum value, that is, without reference to the defendant's taking out a loan against the pension or his provision of survivor's pension benefits to his second wife. This contention appears to be an issue of first impression at the appellate level in this judicial department. While we conclude that the plaintiff's *Majauskas* share must be calculated with reference to the reduction in benefits resulting from the defendant's provision of survivorship benefits to his second wife, we agree with the plaintiff that her share should be calculated without reference to the reduction in benefits resulting from the loan made to the defendant.

The stipulation provided that, at the time the defendant retired, the plaintiff would receive her proportionate share of the pension pursuant to *Majauskas,* and that she would receive "fifty (50%) percent of the value of the pension for 13 years, 7 months and 7 days." The stipulation was silent as to how the plaintiff's proportionate share of the marital portion of the pension was to be valued, and it did not contain any expressed prohibition against the defendant obtaining a loan against the pension or providing a survivor benefit to a future spouse.

On the one hand, the Court of Appeals, in *McCoy v Feinman* (99 NY2d 295 [2002]), made clear that where a stipulation is

not ambiguous and does not cover certain benefits—in that case, preretirement death benefits—the plaintiff is not entitled to receive those benefits. The Court of Appeals explained that

> "[a] proper QDRO obtained pursuant to a stipulation of settlement can convey only those rights to which the parties stipulated as a basis for the judgment. An alternative result would undermine litigants' freedom of contract by allowing QDROs to create new rights—or litigants to generate new claims—unexpressed in the settlement stipulation" (*id.* at 304).

Thus, it is improper for a court to issue any qualified domestic relations order that encompasses rights that were not provided in the underlying stipulation (*id.*). Here, the parties, when they were drafting the stipulation, could have agreed to insert a provision requiring that the plaintiff's distributive share of the marital portion of the defendant's pension was to be based upon the value of the pension prior to any reductions to that value occurring by virtue of a loan or the provision of survivor benefits for a new spouse. However, they did not do so. Accordingly, if this reasoning were strictly applied, a modification of the QDRO on these grounds would impermissibly grant more expansive rights to the plaintiff than that which the parties negotiated and agreed upon in the stipulation (*see Von Buren v Von Buren*, 252 AD2d 950, 950-951 [1998]; *Keith v Keith*, 241 AD2d 820, 822 [1997]; *De Gaust v De Gaust*, 237 AD2d 862, 863 [1997]). Indeed, in *Lemesis v Lemesis* (38 AD3d 1331 [2007]), the Fourth Department faced a similar issue. There, the wife sought a QDRO directing that her share in the husband's pension from the Federal Employment Retirement System (hereinafter FERS) be calculated as if the defendant had elected the highest benefit option. The Supreme Court agreed with the wife, but the Fourth Department reversed, noting that, pursuant to the parties' separation agreement, as incorporated into their judgment of divorce, the defendant's FERS pension was to be apportioned in accordance with *Majauskas*. Like the defendant here, the husband in *Lemesis* remarried and, upon his retirement, opted for a distribution plan that created a survivor benefit for his second wife, thereby reducing the benefits he would have received had he elected the self-only option. The Fourth Department determined that the wife was not entitled to have her share of the FERS pension benefits be calculated as if the husband had elected the highest benefit option, inasmuch as there was no provision expressed in the separation agreement providing for such relief.

■ Here, inasmuch as the stipulation did not contain any provision directing that the plaintiff's share of the defendant's pension benefits be calculated on the maximum value that the pension would have had without the defendant's provision of post-divorce survivor benefits to his second wife, the Supreme Court, and this Court, are without authority to grant the plaintiff the greater rights she seeks.

In 1993, the Court of Appeals, in *Olivo v Olivo* (82 NY2d 202 [1993]), addressed the effect that postjudgment events have upon the amount of pension benefits later paid to nontitled ex-spouses. *Olivo* acknowledged that there are a number of postjudgment events that may increase or decrease the amount of a pension's payout. These include the early retirement of a pensioner in appropriate circumstances, which reduces the value of the pension and its payout to both the titled and nontitled spouse (*id.* at 210) or, conversely, the pensioner's acceptance of a retirement incentive that boosts the value of the pension and results in a greater payout to both the titled and nontitled spouse (*id.*). The pensioner may, after a divorce, remain in employment for many years, thereby increasing the pension's value to the benefit of both ex-spouses (*id.* at 209). Similarly, wage fluctuations that are not necessarily in the control of the employee affect the ultimate value of a pension and affect both ex-spouses. In *Lemesis v Lemesis* (38 AD3d 1331 [2007]), the Fourth Department addressed the circumstance relevant here, where the employed spouse remarried and provided his new wife with a survivorship benefit that reduced the pension's monthly payout upon retirement. The Fourth Department held there that the husband's ex-wife was not entitled to have her *Majauskas* share of the pension calculated upon the pension's highest potential amount, as if there had been no survivorship benefit provided to the second wife, since there was no provision expressed in the separation agreement providing for such relief (*id.* at 1332). In yet another Fourth Department decision, *Unser v Fox* (83 AD3d 1429 [2011]), the husband began receiving a police pension that was split with his ex-wife, and then commenced new employment that was later reclassified as state employment that suspended his pension benefits. The Fourth Department held that the wife was not entitled to a money judgment equal to her share of the suspended pension payments, as the wife was entitled only to a share of the pension that is ultimately obtained by the pensioner (*id.* at 1431, citing *Olivo v Olivo*, 82 NY2d at 210).

Applying the foregoing analysis to the instant situation, the plaintiff is not entitled to a recalculation of the defendant's pension benefits so as to negate the survivorship benefit bestowed by the defendant on his second wife (*see Olivo v Olivo*, 82 NY2d at 210; *Unser v Fox*, 83 AD3d at 1431; *Lemesis v Lemesis*, 38 AD3d at 1332). The reduction in the monthly payouts occasioned by the provision of survivorship pension rights to the defendant's second wife was not prohibited by the negotiated terms of the stipulation, and the detriment arising from the reduction in the payout amount is mutually shared by both the plaintiff and the defendant. Accordingly, the effect occasioned by the defendant's provision of survivorship benefits to his second wife should be treated no differently than had the defendant retired early, accepted a retirement incentive, worked additional years, or been subject to an employer's lawful amendment of the underlying pension plan.

We take a different view, however, with respect to the loan that was secured by the defendant against his pension, which was not repaid at the time of his retirement, and which reduced the amount of monthly payments to both parties, and conclude that the plaintiff's *Majauskas* share may not be reduced by virtue of the loan. The reason is that, with respect to the loan, the parties did not receive any *mutual* benefit from the defendant's receipt of the loan proceeds. The loan proceeds were paid to and used solely by the defendant, yet the plaintiff, who derived no benefit from the loan proceeds, is being required to share in its cost by virtue of her receipt of reduced monthly payments for so long as the pension benefits are paid to her. The circumstances under which the defendant secured the loan are distinctly different from those where an employee takes early retirement, works additional years, elects a survivorship benefit, accepts a retirement incentive package, or is subject to changes to the pension imposed by the employer, as, in all of those instances, the gains or losses are mutually shared by the retiree and by the ex-spouse receiving a marital share of the benefits. The defendant's loan, by contrast, is not grounded in mutuality, as the loan proceeds that reduced the value of the defendant's pension were not shared with the plaintiff. Indeed, were this court to hold that spouses may take loans against their pensions and retain 100% of the loan proceeds, and thereby reduce their obligation to ex-spouses, employees might be given the incentive to unilaterally strip their pensions of value at the partial expense of their ex-spouse. The reasonable

expectations of the parties, as discerned from their stipulation, cannot be construed as permitting the consequences urged by the defendant, where both parties incur a reduction in the monthly payout of pension benefits by virtue of a loan, but the defendant derives 100% of the benefit of the loan proceeds.

Finally, the parties dispute whether, if arrears are awarded to the plaintiff via the QDRO, an evidentiary hearing is required to resolve the amount, duration, and tax implications of the arrearage payments. Since we have denied the plaintiff's request to base her distributive share of the defendant's pension upon its value prior to its reductions by survivorship benefit, there is no need for an evidentiary hearing. The pension administrator of the FDNY pension fund can easily calculate the amount that should have been paid to the plaintiff from March 1, 2008, to March 26, 2013, and easily calculate the plaintiff's *Majauskas* share of the defendant's pension, after adding back 50% of the reduction in monthly benefits occasioned by the defendant's loan. Accordingly, we find that the best, least complicated method for the defendant's payment of pension arrears is for the pension administrator of the FDNY pension fund to pay to the plaintiff, on a prospective monthly basis, the monthly payments that the plaintiff should have received from March 1, 2008, to March 26, 2013, in addition to those payments that she will receive in the normal course of applying the terms of the QDRO.

The parties' remaining contentions either are without merit or have been rendered academic by our determination.

In light of the foregoing, the QDRO is modified, on the law, by adding thereto provisions directing the plan administrator of the New York Fire Department Pension Fund to compute the plaintiff's share of defendant's pension based upon what the value of the pension would have been without reduction for the proceeds of a loan tendered to the defendant by the New York Fire Department Pension Fund, and to tender to the plaintiff, as alternate payee, her proportionate share of the defendant's retirement benefits that accrued from March 1, 2008, to March 26, 2013, in 61 equal monthly payments, until the arrearage is paid in full and, as so modified, the QDRO is affirmed insofar as appealed from.

HALL, MILLER and HIND-RADIX, JJ., concur.

Ordered that the qualified domestic relations order is modified, on the law, by adding thereto provisions directing the plan administrator of the New York Fire Department Pension Fund

to compute the plaintiff's share of defendant's pension based upon what the value of the pension would have been without reduction for the proceeds of a loan tendered to the defendant by the New York Fire Department Pension Fund, and to tender to the plaintiff, as alternate payee, her proportionate share of the defendant's retirement benefits that accrued from March 1, 2008, to March 26, 2013, in 61 equal monthly payments, until the arrearage is paid in full; as so modified, the QDRO is affirmed insofar as appealed from, with costs to the plaintiff.