Fernandez v Fernandez (2024 NY Slip Op 00214)

Fernandez v Fernandez

2024 NY Slip Op 00214

Decided on January 18, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 18, 2024

535630
[*1]Ines Fernandez, Respondent,
v
Frank Fernandez, Appellant.

Calendar Date:November 15, 2023

Before:Lynch, J.P., Pritzker, Reynolds Fitzgerald, McShan and Powers, JJ.

Balzer & Leary, PLLC, Albany (Gerald P. Leary of counsel), for appellant.
Corbally, Gartland and Rappleyea, LLP, Poughkeepsie (Ryan Dwan of counsel), for respondent.

Pritzker, J.
Appeal from an order of the Supreme Court (James P. Gilpatric, J.), entered April 21, 2022 in Ulster County, which partially granted plaintiff's motion for, among other things, enforcement of the provision in the judgment of divorce regarding defendant's military pension.
Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married for 39 years. However, the marriage having broken down irretrievably, the wife commenced a divorce action in December 2017 and the parties obtained a judgment of divorce dissolving the marriage in November 2019. Meanwhile, the parties entered into an opting out agreement (hereinafter the agreement) in July 2019 that was incorporated but not merged into the judgment of divorce. The agreement provided, as relevant here, that the wife was entitled to her Majauskas share of the husband's military pension, which was already in "pay status" at the commencement of the divorce action in 2017. Following the judgment of divorce, the wife retained counsel to prepare a military qualifying order (hereinafter MQO), which was signed by Supreme Court (Mizel, J.) in July 2020. The wife began receiving benefits from the Defense Finance and Accounting Service in November 2020 after the MQO was administratively processed.
In September 2021, the wife moved, by order to show cause, to hold the husband in contempt for failing to make payments of her Majauskas share of the husband's pension payments from the period of the commencement of the divorce action in December 2017 until her payments began in November 2020. The wife further sought a payment of said amount plus interest and an award of counsel fees. The husband opposed, asserting, among other things, that the agreement did not provide for "retroactive" payments. Supreme Court (Gilpatric, J.) granted the wife's motion in part, determining that the wife's agreed-upon share "cannot be reduced solely due to the fact that the [husband's] pension was in pay status at the time of commencement and prior to the matter being resolved." Supreme Court therefore determined that the parties' reference to Majauskas in the agreement required that the wife's share be calculated as of the date of commencement. The court awarded the wife a judgment for the retroactive arrears from the commencement date and counsel fees, but declined to find the husband in contempt. The husband appeals.
As relevant here, the agreement provides in Article X, "[t]he husband is owner of a Defined Benefit Pension Plan through the United States Military, . . . [t]he [w]ife shall be entitled to her Majauskas share of same . . . ." There is no dispute that, pursuant to the Majuaskas formula (see Majauskas v Majauskas, 61 NY2d 481 [1984]), the wife is entitled to a 50% share of the husband's pension. The only issue is on which date her entitlement to those benefits began. The wife's position is that incorporating Majauskas into the agreement triggered payout from the commencement of the action, either directly [*2]or by implication. Moreover, the wife asserts the irrefutable fact that there was no waiver of pension arrears contained in the agreement. The husband believes that incorporating Majauskas did not trigger arrears as the parties failed to negotiate for retroactive pension benefits. As such, there was nothing to waive and no arrears because, although entirely marital property, the wife's right to a portion of the pension was inchoate and materialized only when the disbursements began pursuant to the MQO on November 1, 2020.
Initially, Majauskas does not address pension arrears (see 61 NY2d 481) and merely referencing the Majauskas formula in the agreement does not automatically trigger arrears from the time of commencement. More particularly, the Majauskas' formula sets the commencement of the action as the date on which the marital property portion of a pension ceases to accrue (see 61 NY2d at 488), but this principle does not automatically create arrears when an opting out agreement and MQO are later used to effectuate distribution of the benefits.[FN1] Moreover, the fact that a court in a contested equitable distribution case is free to order a party to pay arrears, even dating back to the commencement of the action (see e.g. Johnson v Johnson, 297 AD2d 279, 281 [2d Dept 2002]), is of no moment relative to enforcing language contained in an opting out agreement (see generally Kraus v Kraus, 131 AD3d 94, 100-101 [2d Dept 2015]). Rather, the agreement was a proper subject of negotiation and is therefore governed by contract principles (see Kumar v Kumar, 96 AD3d 1323, 1324-1325 [3d Dept 2012]; Van Orden v Van Orden, 96 AD3d 1129, 1129 [3d Dept 2012]).
However, under this rubric, on the date the agreement was executed, July 19, 2019,[FN2] the husband was unequivocally bound and clearly had bargained to equally share the pension payout stream with the wife from that day forward. Moreover, it is legally insignificant that the MQO was not filed until months later and payments to the wife did not begin until November 1, 2020 (see Schunke v Schunke, 55 Misc 3d 1104, 1107 [Sup Ct, Rockland County 2017]). "Indeed, the fact that [the husband] was in pay status underscores his understanding that his [military] [p]ension payment would be reduced as a result of the [agreement] . . . [and] supports [our] finding that [the wife's] interest in [the husband's] pension vested upon the execution of the [agreement] . . . and any delay in submitting [the MQO] to effectuate this recognition does not vitiate this interest" (id.). Therefore, "[the wife's] entitlement to a portion of [the husband's] monthly pension benefits was a right created under the . . . agreement and Supreme Court's order issuing the [MQO] merely recognized such right" (Boylan v Dodge, 42 AD3d 632, 633 [3d Dept 2007] [internal citation omitted]; see Peek v Peek, 301 AD2d 201, 204-205 [3d Dept 2002], lv denied 100 NY2d 513 [2003]). In fact, in Kraus v Kraus (131 AD3d at 104), the Second Department noted that [*3]"QDROs are merely procedural mechanisms for effectuating payment of a spouse's share of the other spouse's pension." In that case, the plaintiff submitted a QDRO 6½ years after the judgment of divorce was signed, and 4½ years after the defendant retired (id. at 97, 103-104). Given that the parties, in a stipulation, had "expressly provided that the plaintiff would receive her proportionate marital share of the defendant's pension at the time the defendant retired," the plaintiff's delay in filing the QDRO did not impair her right to share in the retirement benefits as agreed to by the parties in the stipulation (id. at 103-104). Indeed, the Court held that "[b]y receiving payments referable to that period of time, the plaintiff will not be enjoying a windfall, but will simply be receiving the property that she was entitled to receive . . . , pursuant to the clear language of the stipulation" (id. at 104).
Here, the fact that the husband was already in pay status at the time of the agreement does not logically distinguish the arrears analysis from Kraus. The delay in filing the MQO and the military's no arrears policy have no relevance to the wife's bargained-for rights under the agreement. Significantly, even though the parties added minor handwritten modifications to the agreement, there is nothing in the document that impliedly or explicitly waives monies due after its execution. It is therefore not the wife who is seeking to expand her contractual rights, but rather it is the husband who is seeking to restrict the wife's rights, which she negotiated and secured under a fair reading of the agreement.
Accordingly, a meeting of the minds occurred when the agreement was executed, binding the husband to pay the wife a 50% share of the pension from that day forward. Irrespective of the procedural hurdles necessary to effect the MQO, at the end of the day, this obligation was unambiguously undertaken by the husband. As such, we remit the matter to Supreme Court for a calculation of the amount due to the wife and for the parties to discuss any relevant tax consequences.
Lynch, J.P., and Powers, J., concur.
McShan, J. (dissenting).
We agree with our colleagues in the majority that the parties' mere reference indicating that defendant's (hereinafter the husband's) military pension would be divided pursuant to Majauskas does not establish that they intended to award payment arrears to the date of commencement of the action (see Watson v Watson, 84 AD3d 1067, 1068 [2d Dept 2011]; see also Roche v Lorenzo-Roche, 149 AD3d 1513, 1514 [4th Dept 2017]). However, we part ways as it concerns the majority's decision to read in the date that the parties entered into their opt-out agreement as the operative date for dividing the pension, as the plain language of the agreement provides no basis to do so.
There is no dispute that the agreement does not explicitly entitle plaintiff (hereinafter the wife) to retroactive arrears in the husband's military pension[*4]. Moreover, the parties' agreement clearly identifies the husband's military pension as "a Defined Benefit Pension Plan," which does not have an individual account balance, and, upon retirement, entitles the beneficiary to a fixed periodic payment (see generally Hughes Aircraft Co. v Jacobson, 525 US 432, 439 [1999]). To this point, the parties expressed an intent to divide the husband's defined pension pursuant to the Majauskas formula and the wife's share of that asset was not reduced in any way by the amounts the husband collected between the date of the parties' agreement and the processing of the military qualifying order (hereinafter MQO). Accordingly, both the husband and the wife will receive their respective fixed shares of the husband's military pension for their entire lives, and the wife's agreed-upon Majauskas share is undisturbed regardless of the date on which she begins to receive payments.
With these uncontested facts in mind, it is our view that the parties' understanding as to the date on which the pension would be separated is contained within the four corners of the agreement by virtue of the omission of any precise date for effectuating that separation. Indeed, by opting out of the equitable distribution laws, the parties eschewed any interference from Supreme Court concerning the terms of their separation and, thus, providing benefits beyond those expressed within the plain language of their agreement would interfere with the parties' right to chart their own course. To this point, it is our view that the clear import from the text of the agreement is that it provided nothing more than the division of the pension pursuant to Majauskas, which was ultimately accomplished by the processing of the MQO.[FN3] By adhering to that interpretation, the husband and the wife will receive their respective fixed shares of the husband's military pension for their entire lives, as the husband chose a survivor option as reflected in their agreement, and no award of arrearages, a result that provides the parties with precisely what they bargained for (see Scheriff v Scheriff, 152 AD3d 724, 725 [2d Dept 2017]). Simply put, the processing of the MQO that took place after the parties' divorce was finalized provided the wife precisely what she bargained for pursuant to the plain unambiguous contractual language (see B.D. v E.D., 218 AD3d 9, 18 [1st Dept 2023]), and an award of retroactive arrears under these circumstances would create a new right to such an award that is unexpressed in the parties' agreement (see Shkreli v Shkreli, 186 AD3d 638, 640 [2d Dept 2020], lv dismissed 37 NY3d 1024 [2021]; see also Karmin v Karmin, 19 AD3d 458, 459 [2d Dept 2005]).
Our colleagues in the majority, in an effort to rectify a perceived inequity, would find that the wife is entitled to her Majauskas share of the husband's pension from the date that the agreement was fully executed, regardless of the fact that the agreement that the parties freely negotiated contains [*5]no such terms (see B.D. v E.D., 218 AD3d at 18; see also Keith v Keith, 241 AD2d 820, 822 [3d Dept 1997]). In our view, doing so would establish the untenable precedent that any agreement between divorcing spouses that contains a reference to the Majauskas formula while omitting an effective date would provide the nontitled spouse with the right to an award of retroactive arrears to the date of the parties' agreement, regardless of whether the parties intended to agree to such a right or contemplated the tax consequences of doing so. Moreover, while the majority posits that the husband contemplated an impending reduction to his pension payments by virtue of his acquiescence to the terms of the opt-out agreement, that fact does not support the resulting conclusion that that the parties agreed to divide the asset as of the date that he did so. To this point, the husband's payout status at the time of the agreement was not a trigger for the wife's payments, as the parties opted out of the equitable distribution laws, and, therefore, the right to receive payments as of that date rather than the date of the MQO constituted, in effect, a right to arrears that had to be negotiated (see Kraus v Kraus, 131 AD3d 94, 100 [2d Dept 2015]). To include the unnegotiated right would require this Court to also assume that the parties further agreed that the husband would be responsible for the tax liabilities for the payments he had already received, as that consequence was effectuated by the MQO rather than expressly indicated in the parties' agreement. To this point, the need to remit this matter for the parties to address the potential tax consequences of the award of arrears underscores that a separation of the pension at any point prior to the processing of the MQO was not contemplated or agreed to. Stated with brevity, the parties' agreement does not explicitly entitle the wife to the payments as of the date of the agreement, "nor can such a reference be implied from the unambiguous terms of [their agreement]" (McPhillips v McPhillips, 165 AD3d 917, 920 [2d Dept 2018]), and providing the wife with such payments, which amount to retroactive arrears, in order to effectuate such a reading runs afoul of the well-established principle that courts should not provide benefits to parties beyond those for which they expressly contracted (see Weaver v Weaver, 198 AD3d 1140, 1145-1146 [3d Dept 2021]; Stevens v Stevens, 11 AD3d 791, 792 [3d Dept 2004]; Agars v Agars, 6 AD3d 866, 867 [3d Dept 2004]; Grieco v Grieco, 307 AD2d 488, 488 [3d Dept 2003]; see also Murphy v Murphy, 120 AD3d 1319, 1321 [2d Dept 2014]). For these reasons, we would reverse Supreme Court's order.
Reynolds Fitzgerald, J., concurs.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as awarded retroactive payments of a portion of defendant's military pension to plaintiff for the period between December 11, 2017 and July 18, 2019; matter remitted to the Supreme [*6]Court for calculation of the amount owed to plaintiff; and, as so modified, affirmed.

Footnotes

Footnote 1: In this vein, as to retirement benefits, "any party who is already in pay status may continue to receive such payments thereunder" (Domestic Relations Law § 236 [B] [2] [b] [2]).
Footnote 2: The agreement is dated July 19, 2019 and was signed and agreed to by the wife on that date. The husband, however, signed months prior, on April 2, 2019.

Footnote 3: To this point, it is worth noting that the agreement contemplates the need for completion of forms and documents post agreement in order to effectuate the separation of the pension, and required the parties to cooperate in that endeavor.